The UNITED STATES of America,
Plaintiff-Appellee,

v.

Tom Richard APODACA,
Defendant-Appellant.

No. 85–1532.

United States Court of Appeals,
Tenth Circuit.

June 8, 1987.

Kathy P. Bonham of Bonham & Peake, Denver, Colo., for defendant-appellant.

William D. Welch (Robert N. Miller, U.S. Atty., David J. Thomas, John O. Martin, and Dawn Bowen, Asst. U.S. Attys., with him, on the brief), Denver, Colo., for plaintiff-appellee.

Before LOGAN, ANDERSON, and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Tom Richard Apodaca was jointly charged, along with 44 other defendants, in one indictment with possession of a controlled substance with an intent to distribute and with conspiracy to distribute a controlled substance in violation of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The indictment was later dismissed as to Apodaca, who then pled guilty to an information charging him in a first count with using a communication facility in the distribution of cocaine, in violation of 21 U.S.C. § 843, and in a second count with the possession of a controlled substance, in violation of 21 U.S.C. § 844(a). Apodaca was sentenced to two years imprisonment on the first count, and on the second count was placed on probation for five years and fined $1,000.

Apodaca's guilty plea was entered pursuant to Fed.R.Crim.P. 11(a)(2), and was conditioned on Apodaca's right to appeal the denial by the district court of a motion to dismiss the indictment because of alleged grand jury irregularities. Apodaca also reserved the right to challenge, on appeal, the denial by the district court of a motion to suppress intercepted telephone conversations between himself and one Jesus John Hernandez, the latter a co-defendant and the reputed ringleader of a large cocaine conspiracy.

Apodaca's first ground for reversal is that the district court erred in denying his motion to dismiss the indictment because of grand jury irregularity. The irregularity relied on is the allegedly improper participation in the grand jury proceeding in violation of Fed.R.Crim.P. 6(e) by Thomas Fisher and Jeff Ruetz, police officers for the City and County of Denver. Each of these two had been deputized as a Special Deputy United States Marshal for the purpose of this particular drug investigation. Specifically, Apodaca complains that these officers reviewed some grand jury materials. Fisher evidently had access to certain subpoenaed grand jury documents and reviewed and analyzed them. Ruetz reviewed and analyzed certain subpoenaed corporate records, and he also read a transcript of the grand jury testimony of a Drug Enforcement Administration agent regarding a surveillance that Ruetz and the agent had conducted together.

■ We do not believe these irregularities, if such they be, rise to a level sufficient to mandate the dismissal of the indictment. The dismissal of an indictment is an extraordinary remedy, generally reserved for cases of serious prosecutorial misconduct, where the misconduct is "flagrant to the point that there is some significant infringement on the grand jury's ability to exercise independent judgment." *United States v. Pino,* 708 F.2d 523, 530 (10th Cir.1983). *See also United States v. Anderson,* 778 F.2d 602 (10th Cir.1985).[1]

Apodaca's second ground for reversal concerns the wiretap on Hernandez' residential phone. Pursuant to 18 U.S.C. § 2518, there was a court-ordered wiretap of Jesus John Hernandez' home phone from June 28, 1984, to July 16, 1984. In support of the application for a wiretap of Hernandez' residential telephone, the United States submitted a 64–page affidavit subscribed to by Detective Thomas R. Fisher, an eleven-year veteran with the Denver Police Department, and by Special Agent Vance W. Stacy, a law enforcement officer with eight years experience, then assigned to the Denver Office of the Drug Enforcement Administration. The affiants stated in their affidavit, *inter alia,* that there was probable cause to believe that Hernandez, Apodaca, and ten others were committing specified offenses against the United States and that a wiretap on Hernandez' home phone would materially assist in the investigation of the entire matter.

■ Apodaca initially argues that although the government may well have had such "probable cause" to believe that Hernandez was committing an offense as would justify a wiretap of Hernandez' residential phone, it did not have "probable cause" to believe that Apodaca was com-

---

1. One of Apodaca's co-defendants, Portia Oswalt, also moved to dismiss the indictment on the identical grounds urged by Apodaca for dismissal, i.e., the participation in grand jury proceedings by Officers Fisher and Ruetz. The district court denied Oswalt's motion, and on appeal we affirmed. *See United States v. Os-* *walt,* No. 85–1486, Order and Judgment entered on July 21, 1986. This panel is not bound to follow *Oswalt,* but we are persuaded thereby. In *Oswalt,* another panel of this court held that any grand jury irregularity involving Officers Fisher and Ruetz did not mandate the drastic remedy of dismissal of the indictment.

mitting any offense. Such being the case, according to Apodaca, his motion to suppress should have been granted. We disagree. Paragraphs 82 through 85 and paragraph 171(g) of the affidavit indicate probable cause to believe that Apodaca was a cocaine source and that there was a connection between Apodaca and Hernandez.[2]

■ Apodaca also attacks the Hernandez wiretap on the ground that such was unnecessary, as required by 18 U.S.C. § 2518(1)(c), and that the intercepted calls were improperly minimized, as required by 18 U.S.C. § 2518(5). We are not persuaded. The provisions of 18 U.S.C. § 2518(1)(c) are not designed to force the government to exhaust all other conceivable investigative procedures before resorting to wiretapping. *United States v. Page,* 808 F.2d 723, 729 (10th Cir.1987); *United States v. Johnson,* 645 F.2d 865 (10th Cir. 1981), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981). Here, the affidavit revealed that a number of investigatory techniques had been employed and were not likely to succeed if continued. Undercover agents were unable to penetrate the alleged conspiracy due to Hernandez' secretive practices. Increased visual surveillance would have greatly increased the risk of detection. Furthermore, it appeared that Hernandez' particular *modus operandi* made it impossible to uncover Hernandez' method of storing and receiving drugs. On this record, we find no error in the district court's holding that the circumstances called for a wiretap on Hernandez' residential phone.

■ Nor do we believe that the intercepted calls were improperly minimized, as Apodaca claims. The minimization question is one of reasonableness, *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), and when viewed in context, the government's minimization efforts here were reasonable under the circumstances.[3]

Judgment affirmed.

---

**2.** At the outset we note that for the purposes of argument, Apodaca concedes that probable cause sufficient to justify the interception of Hernandez' conversations existed. However, we believe that the affidavit also established probable cause with respect to Apodaca. The affidavit revealed that Apodaca's 1970 International van arrived at a Denver residence just before undercover agents attempted to purchase cocaine outside that home. The prospective cocaine seller informed the agents that his cocaine source was then inside the house, and that this "source" was the owner of a barbershop. Thereafter, the government learned, from a Lakewood, Colorado, police officer, that Apodaca was known to that officer as being an "active trafficker of cocaine," and that Apodaca owned a barbershop. A pen register installed on Hernandez' telephone revealed a connection between Apodaca and the telephone the government wished to tap. In view of our finding of probable cause, we need not here consider the government's alternative argument that, assuming that the affidavit did not establish probable cause as to Apodaca, such fact would not justify granting his motion to suppress. In this latter regard, *see United States v. Domme,* 753 F.2d 950 (11th Cir.1985) and *United States v. Martin,* 599 F.2d 880 (9th Cir.1979), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979).

**3.** Here, some 3,808 calls were intercepted. Of this number, more than half were calls to a paging service, recordings, and incomplete calls, and an additional 623 calls were of less than two minutes duration. Thus, considering the number of minimized calls (216) in context, we do not believe the district court erred in ruling that the government made a good faith attempt to minimize irrelevant conversations.