**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jesus John HERNANDEZ,**
**Defendant-Appellant.**

**No. 86–1339.**

United States Court of Appeals,
Tenth Circuit.

Sept. 22, 1987.

Richard J. Banta and Richard N. Stuckey, Denver, Colo., for defendant-appellant.

William D. Welch, Asst. U.S. Atty., Mountain States Drug Task Force (Robert N. Miller, U.S. Atty., Dist. of Colorado, with him on the briefs), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, and SEYMOUR and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant was convicted in a jury trial of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (Counts I, II, and III,) conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count IV), and management of a continuing criminal enterprise (CCE) in violation of 21 U.S.C. § 848 and 18 U.S.C. § 2 (Count VIII). Defendant was sentenced to fifteen years in prison on Count VIII; five years on Count I (to run consecutively to Count VIII); ten years on Count II (to run concurrently with Count VIII); and ten years on Count III (to run consecutively to Count VIII). No additional sentence was imposed for the conviction on Count IV, as it was deemed merged with Count VIII. Defendant appeals his conviction on several bases, contending that the district court erred (1) in denying his motion to sever Count VIII, (2) in granting the government's application for a wiretap, or alternatively, in denying his motion for disclosure of the identity of informants referred to in the affidavit in support of the wiretap application, (3) in failing to hold a *James* hearing, *United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), before trial began and in finding the statements of alleged co-conspirators admissible, (4) in denying his motion for judgment of acquittal and dismissal of the indictment, and (5) in refusing to admit evidence of threats against the defendant made after his arrest. For the reasons set forth below, we reject each of the defendant's contentions and affirm the judgment of the trial court.

Defendant-appellant Hernandez was indicted on October 10, 1984, with 44 other defendants for his participation in and control of a drug trafficking organization. Defendant was not taken into custody until February 6, 1985, but a majority of his co-conspirator defendants were arraigned in October, 1984. On January 7 and 8, 1985, hearings were held by the district court concerning the validity of the wiretap

placed on defendant's telephone. His co-defendants' motions to suppress the evidence derived from the wiretap were denied by the district court on January 21, 1985. On February 4, 5, 6 and 7, 1985, the district court held pretrial hearings to determine the admissibility of co-conspirators' statements. These hearings involved a majority of the defendants in the case, but not defendant. On February 11, 1985, the district court ruled that the government had sustained its burden and that the co-conspirators' statements would be admissible at the trial of the defendants then present in court pursuant to Fed.R.Evid. 801(d)(2)(E).

On October 8 and 9, 1985, defendant's pretrial motions to suppress wire interceptions and alternatively to disclose the identity of informants referred to in the affidavit in support of the wiretap application, to sever the CCE count, and for a pretrial hearing on the admissibility of co-conspirators' statements came on for hearing before the district court. All the motions were denied with the exception of defendant's request for a pretrial hearing to determine the admissibility of co-conspirators' statements, which was apparently deferred until trial.

On October 21, 1985, plea negotiations with the defendant terminated upon his written rejection of the government's oral proposal suggesting that he enter a plea of guilty to Count VIII of the indictment in exchange for the dismissal of the remaining counts. On October 28, the defendant failed to appear for a bond hearing, and on November 4, he failed to appear for trial. Defendant was apprehended on December 13, 1985, and his trial was rescheduled for January 6, 1986. The defendant's motion to dismiss the indictment on the ground that the government failed to comply with an alleged plea agreement was denied by the trial court on January 3, 1986. On January 9, 1986, the trial court granted the government's motion to exclude post-indictment evidence unrelated to the defendant's guilt or innocence with respect to the crimes charged in the indictment.

A jury trial was held from January 13 through January 23, 1986. On January 24, the jury returned guilty verdicts as outlined above. On February 6, 1986, the trial court heard testimony on defendant's motion for judgment of acquittal notwithstanding the verdict, which was based on defendant's position that the government breached a plea agreement with him. The court denied the motion, and defendant was sentenced on February 28, 1986. The judgment and commitment order was entered March 3, 1986, and defendant filed his notice of appeal that same day.

Defendant first contends that the trial court erred in refusing to sever Count VIII from the remaining counts. Defendant asserts that he was unfairly prejudiced by the court's refusal to sever because the testimony he wished to give in his defense of Count VIII might tend to incriminate him on the various other counts. We disagree.

■ The decision to grant a severance is left to the sound discretion of the trial court, and we will not reverse such a decision in the absence of a strong showing of prejudice. *United States v. Valentine*, 706 F.2d 282, 289–90 (10th Cir.1983). "The burden of the defendant to show an abuse of discretion in this context is a difficult one." *Id.* at 290. Also, the mere fact that defendant might have a better chance at acquittal if the charges are tried separately is not sufficient to require severance. *Id.*

This court, in *Valentine*, adopted the guidelines set forth in *Baker v. United States*, 401 F.2d 958 (D.C.Cir.1968), *cert. denied*, 400 U.S. 965, 91 S.Ct. 367, 27 L.Ed.2d 384 (1970), to be used in balancing the rights of the defendant against economical judicial administration.

"[N]o need for a severance exists until the defendant makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other. In making such a showing, it is essential that the defendant present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not

wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine and to enable it intelligently to weigh the considerations of 'economy and expedition in judicial administration' against the defendant's interest in having a free choice with respect to testifying."

*Valentine,* 706 F.2d at 291 (quoting *Baker,* 401 F.2d at 977).

■ We initially note some concern as to the sufficiency of the defendant's showing regarding the nature of the desired testimony. Defendant's affidavit, which accompanied his motion to sever, simply stated his belief that he had a valid defense to Count VIII, the fact that he *might* testify as to Count VIII, and his belief that the testimony given as to Count VIII would incriminate him as to the other counts. Rec. vol. I, Doc. 17. Likewise, at the hearing on the motion to sever, counsel for defendant simply reiterated that he felt it would be necessary for defendant to testify as to Count VIII, and that his testimony might implicate him on the remaining counts. Rec. vol. XV at 109–113. Defense counsel cryptically noted that defendant's testimony would have to do with the substantial income and supervisory capacity aspects of the CCE charge. *Id.* at 113. Defendant thus made no attempt to outline or detail his proposed testimony in conjunction with his motion to sever.

"An accused should show the specific testimony he will present about one offense, and his specific reasons for not testifying about others, to justify severance." *United States v. Bronco,* 597 F.2d 1300, 1303 (9th Cir.1979). We do not feel that the ambiguous references to defendant's proposed testimony in this case were sufficient to enable the trial court to determine the extent of the possible prejudice to defendant, and to intelligently weigh the prejudice against the consideration of judicial economy. *See United States v. Forrest,* 623 F.2d 1107, 1115 (5th Cir.), *cert. denied,* 449 U.S. 924, 101 S.Ct. 327, 66 L.Ed.2d 153 (1980).

Defendant next contends that the district court erred in failing to suppress evidence gained through use of a wiretap on his phone. Defendant asserts that the initial granting of the application for a wiretap was erroneous because the government failed to make an adequate showing that traditional investigative procedures had failed, were unlikely to succeed, or were too dangerous as contemplated by 18 U.S.C. §§ 2518(1)(c)[1] and (3)(c).[2] Defendant also asserts that the government failed to properly minimize the intercepted calls as required by 18 U.S.C. § 2518(5).[3] As an alternative to the above contentions, defendant argues that the district court erred in not disclosing the identity of the informants referred to in the affidavit supporting the wiretap application.

The issue as to the propriety of the wiretap on defendant's phone, as well as the minimization issue, were specifically dealt with by a panel of this court in *United*

---

1. 18 U.S.C. § 2518 provides in pertinent part:
   (1) Each application for an order authorizing or approving the interception of a wire or oral communication under this chapter shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:
   ....
   (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous.

2. 18 U.S.C. § 2518 provides in pertinent part:
   (3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the bases of the facts submitted by the applicant that—
   ....
   (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous.

3. 18 U.S.C. § 2518(5) provides in pertinent part:
   Every order and extension thereof shall contain a provision that the authorization to intercept shall be ... conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter.

*States v. Apodaca,* 820 F.2d 348, 350 (10th Cir.1987). The defendant in *Apodaca* challenged the same wiretap on the same grounds set forth by defendant in this case. The panel in *Apodaca* noted that § 2518(1)(c) does not "force the government to exhaust all other conceivable investigative procedures before resorting to wiretapping." *Id.* The panel concluded that, due to the low likelihood of success of traditional investigative procedures and the increased risk of detection accompanying an increase in visual surveillance, the district court did not err in holding that the circumstances called for a wiretap on Hernandez' residential phone. *Id.*

The court in *Apodaca* noted that the minimization question is one of reasonableness. *Id.* The panel then concluded that "the government's minimization efforts here were reasonable under the circumstances," *id.,* and the district court did not err in ruling that the government made a good faith attempt to minimize irrelevant conversations. *Id.* at 350 n. 3. After reviewing the record in this case, we agree with the conclusions reached by the panel in *Apodaca,* and hold that the district court did not err in granting the application for the wiretap and in denying the motion to suppress the results of that wiretap.

Defendant also argues that the district court erred in refusing to order the disclosure of the identity of informants referred to in the affidavit supporting the wiretap application. It is well-established that the public has an interest in protecting the identity of confidential informants so as to encourage the free flow of information necessary in criminal prosecutions. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *United States v. Bloomgren,* 814 F.2d 580, 584 (10th Cir.1987). As this court noted in *Bloomgren,* the Supreme Court decision in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), laid the foundation for a defendant to request the disclosure of a confidential informant's identity. *Bloomgren,* 814 F.2d at 583. However, the public interest in confidentiality of the informant "imposes procedural requirements and evidentiary burdens on a defendant who requests the disclosure of a confidential informant." *Id.* at 584.

In the present case, defendant seeks the identity of the informants referred to in the affidavit in support of the wiretap application. In order to test the veracity of such affidavit or obtain the disclosure of a confidential informant referred to therein, the defendant must make a substantial showing that the *affiants* knowingly made false statements, or made statements with reckless disregard for the truth. *Id.* *See also Franks v. Delaware,* 438 U.S. at 155–56, 98 S.Ct. at 2676–77; *United States v. Schauble,* 647 F.2d 113, 117 (10th Cir.1981). "It is not enough to show that the informant deliberately lied to the unsuspecting affiant." *Bloomgren,* 814 F.2d at 584. *See also Schauble,* 647 F.2d at 117. Thus, because it is the veracity of the affiants that is the crucial inquiry, defendant in the present case must show that the agents who swore out the affidavit in support of the wiretap application knowingly made false statements or made statements in reckless disregard of the truth.

The district court held an evidentiary hearing in conjunction with defendant's motion for sanctions (requesting dismissal of the indictment or suppression of wiretap evidence, alleging untrue statements regarding Joseph Antonio Lopez in the affidavit in support of the wiretap application). The district court heard the testimony of several witnesses, including defendant and one of the agents who submitted the application, and received evidence, including the affidavit of Lopez. At the conclusion of the hearing, the trial judge found that neither of the officers involved in applying for the wiretap intentionally or negligently misled or misrepresented any facts to the court. Rec. vol. XVI at 198. The trial court found that the Lopez affidavit was simply not credible. *Id.* Finally, the judge denied the motion for sanctions, and stated "to the extent there has been mention and arguments of a motion for disclosure of confidential informant, that's denied as well on the basis of what's been heard here today." *Id.* at 199. Our review of the record supports the trial court's determina-

tion that the affiants did not intentionally or recklessly misrepresent material facts in applying for the wiretap. We thus conclude that defendant had ample opportunity to make a substantial showing that the affiants made false statements or statements in reckless disregard of the truth, failed to make such showing, and is therefore not entitled to disclosure of the identity of the confidential informants.

Defendant next raises the issue as to the admissibility of co-conspirator statements, including statements on the wiretap tapes, at his trial. Defendant contends that the district court erred in not holding a *James* hearing as to defendant prior to trial, and in admitting the statements of the co-conspirators as exceptions to the hearsay rule. The district court admitted the co-conspirators' statements pursuant to Fed.R.Evid. 801(d)(2)(E),[4] overruling defendant's hearsay objection.

This court developed a preferred procedure for determining the admissibility of co-conspirator hearsay statements in *United States v. Andrews*, 585 F.2d 961, 964–66 (10th Cir.1978), and *United States v. Petersen*, 611 F.2d 1313, 1330–31 (10th Cir. 1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). While *Andrews* provided the basic rule to be applied in determining the admissibility of co-conspirator hearsay, *Petersen* set out the procedure to be employed in making the determination. The procedure adopted in *Petersen* required the judge alone to make the determination as to the admissibility of co-conspirator statements based upon whether there existed substantial, independent evidence as to the existence of a conspiracy. *Petersen*, 611 F.2d at 1330. The preferred order of proof required the government to first introduce independent proof of the conspiracy, and then connect the defendant to the conspiracy before admitting the co-conspirator's hearsay declarations. *Id.*

*See also United States v. Troutman*, 814 F.2d 1428, 1447 (10th Cir.1987). However, when it was not reasonably practicable to require the showing be made before admitting the co-conspirator's statements, the court could provisionally admit the statements subject to being connected up by subsequent independent evidence. *Petersen*, 611 F.2d at 1330; *Troutman*, 814 F.2d at 1448. Finally, at the conclusion of the evidence, the court was required to make a factual determination as to whether, by a preponderance of the evidence independent of the co-conspirator statements themselves, a conspiracy existed, the declarant and defendant against whom the declaration is offered were members of the conspiracy, and the statement was made in the course of and in furtherance of the conspiracy. *Petersen*, 611 F.2d at 1330–31. *See also Bourjaily v. United States*, — U.S. —, 107 S.Ct. 2775, 2779, 97 L.Ed.2d 144 (1987) (holding preponderance of evidence standard applicable burden of proof for Rule 801(d)(2)(E) determination).

This procedure was recently altered, however, by the Supreme Court case of *Bourjaily v. United States*, — U.S. —, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987). After *Bourjaily*, the court is no longer limited to the consideration of evidence independent of the co-conspirator statements in determining whether a conspiracy existed, whether the declarant and defendant were involved in the conspiracy, and whether the statement was made in the course of and in furtherance of the conspiracy. A court making the requisite factual determinations under Rule 801(d)(2)(E) "may examine the hearsay statements sought to be admitted," as well as the independent evidence presented. *Id.* at 2782. Thus, the court may now look to the co-conspirator statements themselves as at least a partial basis for the findings necessary to admit the statements into evidence.[5]

---

**4.** Fed.R.Evid. 801 provides in pertinent part:
   **(d) Statements which are not hearsay.** A statement is not hearsay if—
   . . . .
   **(2) Admission by party-opponent.** The statement is offered against a party and is ... (E) a statement by a coconspirator of a party

during the course and in furtherance of the conspiracy.

**5.** The Court in *Bourjaily* specifically noted that it "need not decide in this case whether the courts below could have relied solely upon [the] hearsay statements to determine that a conspir-

A determination as to the order of proof to be followed in a case such as this is left to the discretion of the trial judge, but absent some substantial reason not to do so, the preferred order of proof [6] should be adhered to. *Troutman*, 814 F.2d at 1448. The Court in *Bourjaily* specifically declined to express an opinion on the proper order of proof that a trial court should follow in making a determination as to admissibility. *Bourjaily*, 107 S.Ct. at 2779 n. 1. However, even under the prior law of this circuit, the order followed in this case did not constitute an abuse of discretion.

■ As noted in *Petersen*, the procedure employed in the admissibility determination contemplates the presentation of the requisite conspiracy evidence before or during the government's case in chief. *Petersen*, 611 F.2d at 1330; *James*, 590 F.2d at 581–82. Some trial judges require the government to present its conspiracy evidence in a pretrial proceeding, while others require such proof at trial before the co-conspirator hearsay is admitted. *United States v. Austin*, 786 F.2d 986, 990 (10th Cir.1986). While the court in *Austin* noted the somewhat cumbersome nature of the latter procedure, either method is wholly consistent with the preferred order of proof. The defendant thus has no distinct right to a pretrial hearing with regard to the conspiracy determination. *United States v. Monaco*, 700 F.2d 577, 581 (10th Cir.1983) ("a trial court has no obligation to determine admissibility of possible hearsay at the pretrial stage"); *United States v. Ammar*, 714 F.2d 238, 246–47 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Nichols*, 695 F.2d 86, 90 (5th Cir.1982). "At times, the court will be able to make its determination on the basis of proffers or even on the opening or what it knows of the available proof from the pretrial or suppression hearings." 1 Weinstein's Evidence ¶ 104[05] at 104–56

(1986). In this case, the decision not to grant defendant a pretrial hearing did not constitute an abuse of discretion by the trial court where, as the lower court noted, the pretrial hearing would have taken approximately one week and would have involved recalling the officers, witnesses, and counsel in a complicated and repetitive procedure. Rec. vol. VI at 600–01.

■ We also conclude that the trial court was justified in provisionally admitting the co-conspirator statements subject to being connected up, rather than following the preferred order of proof, due to the intertwining nature of the non-hearsay testimony and the challenged statements. As noted, the co-conspirators testified as to their personal contacts and observations as to defendant and his involvement in the conspiracy. The complete testimony of these co-conspirators occasionally included co-conspirator hearsay. However, requiring these small segments of testimony to be presented separately from their surrounding circumstances and out of context would have caused confusion and needless repetition. As to the tapes, which are the subject of defendant's primary contention of inadmissibility, the impracticality of separating the co-conspirator hearsay is even more apparent. The statements of defendant which are contained on the tapes would constitute strong independent proof of a conspiracy and his involvement therein, and would be admissible as admissions of the defendant pursuant to Fed.R.Evid. 801(d)(2)(A). An attempt to separate out the taped statements of defendant from those of his co-conspirators would border on the absurd.

■ Finally, the decision to admit the statements of the co-conspirators did not constitute an abuse of discretion. The district court in this case chose to allow the government to present the independent evi-

---

acy had been established by a preponderance of the evidence." *Bourjaily*, 107 S.Ct. at 2781–82.

**6.** In this context, the "preferred order of proof" simply refers to the requirement that the trial judge make his requisite factual determinations prior to allowing the co-conspirator hearsay statements to be heard by the jury. As dis-

cussed below, this order of proof does not involve a right to a pretrial hearing on admissibility, and in no way precludes the trial judge from exercising his considerable discretion and conditionally admitting the statements subject to later being connected up.

dence along with the co-conspirator hearsay, thus provisionally admitting the hearsay subject to being connected up. Rec. vol. III at 96. The district court recognized that, should the co-conspirator statements not be connected up, "we simply [have] some serious problems about whether the case ought to be dismissed." *Id.* at 96–97. At the conclusion of the government's evidence, however, the district court specifically made the requisite findings that a conspiracy to traffic in cocaine was present, that defendant and the declarants whose statements were being offered were members of the conspiracy, and that the statements offered were made in the course of and in furtherance of the conspiracy. Rec. vol. VI at 601. Our review of the record confirms that there was an abundance of evidence regarding defendant's participation in the conspiracy independent of the challenged statements of the co-conspirators, including the co-conspirators' and the officers' testimony as to their direct observations and contacts with defendant. Our affirmance of the district court on this issue is even stronger once we employ the new standard set forth in *Bourjaily,* which allows the consideration of both the independent evidence and the co-conspirators' statements themselves in making the requisite factual findings. We thus conclude that, under these circumstances, the district court did not abuse its discretion in admitting the challenged statements of the co-conspirators into evidence. *See United States v. Reyes,* 798 F.2d 380, 384–85 (10th Cir.1986).

■ Defendant next contends that the trial court erred in denying his motion for judgment of acquittal and to dismiss the indictment. The basis of the combined motion was that the government had breached a plea agreement, or that the government had at least broken implicit promises to defendant regarding the CCE charges. Defendant, in his brief at page 48, admits that no formal plea agreement was ever entered into.

After hearing the testimony of defendant, defendant's first appointed counsel, and the assistant U.S. attorney who handled defendant's case, the district court denied defendant's motions. The district court found the defendant's testimony regarding the plea agreement "incredible," and expressly found that "no plea agreements [were] ever concluded, at least in this jurisdiction, and, therefore, ... the government did not breach any such plea agreement." Rec. vol. XII at 122. The district court's conclusions were based on observation of the testimony at the motions hearing and at the preceding two-week trial, and thus constitute an assessment of credibility based on those observations. *Id.* at 122–23. After having reviewed the record, and taking into account the trial court's unique opportunity to observe the demeanor of the witnesses and assess credibility, we cannot conclude the trial court erred in finding no plea agreement or breach thereof, and in denying defendant's motions.

■ Defendant's final contention is that the trial court erred in refusing to admit evidence of a threat against defendant's life made after his arrest. Defendant asserts that the evidence was relevant as it corroborated his testimony that he committed the criminal acts because he was under duress due to threats against him by one Chick Fortna. While the trial court did instruct the jury on defendant's duress theory, it refused to admit the evidence of the later threat, stating "there has been no foundation that this defendant even knew about any of the information that is contained in the report at any of the times that are relevant to this case." Rec. vol. IX at 1038. The trial court concluded that the later threat had no bearing on defendant's state of mind at the time the acts charged in the indictment were committed, i.e., the evidence was not relevant, Fed.R.Evid. 401, and was thus inadmissible. Fed.R.Evid. 402.

In reviewing the evidentiary rulings of a trial court, we will not reverse such rulings in the absence of an abuse of discretion. *United States v. Cooper,* 733 F.2d 1360, 1366 (10th Cir.), *cert. denied,* 467 U.S. 1255, 104 S.Ct. 3543, 82 L.Ed.2d 847 (1984). The trial court properly concluded that, be-

cause the threat here at issue occurred well after the alleged acts were committed, they are irrelevant to defendant's perception of danger at the time the acts were committed. Furthermore, the threat at issue here does not corroborate defendant's testimony that Fortna did threaten him, as defendant has offered no solid connection between Fortna and the threat received after his arrest. The trial court did not abuse its discretion in refusing to admit evidence of a threat against defendant received after his arrest.

Affirmed.