**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Rafael A. URENA, Defendant–Appellant.**

No. 93–3313.

United States Court of Appeals, Tenth Circuit.

June 22, 1994.

Kenneth L. Weltz, Curfman, Harris, Rose, Weltz & Smith, Wichita, KS, for defendant-appellant.

Michael G. Christensen (Randall K. Rathbun, U.S. Atty., and Kim M. Fowler, Asst. U.S. Atty., Wichita, KS, with him on the brief), Asst. U.S. Atty., Wichita, KS, for plaintiff-appellee.

Before TACHA and EBEL, Circuit Judges, and SAM, District Judge.*

TACHA, Circuit Judge.

Defendant, Rafael Urena, was convicted of one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, one count of conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and one count of travelling in interstate commerce with intent to engage in unlawful activity in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 1952(a)(3). Defendant brings this appeal asserting that the evidence at trial was not sufficient to sustain his convictions, that the trial court improperly admitted testimony as nonhearsay coconspirator statements, and that the trial court erred in not replacing defendant's interpreter as requested by defense counsel. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. Sufficiency of the Evidence

■ Our first task is to determine whether the evidence at trial was sufficient to sustain defendant's conviction. In determining the sufficiency of the evidence, we review the record de novo, *United States v. Grimes,* 967 F.2d 1468, 1472 (10th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 355, 121 L.Ed.2d 269 (1992), and ask only whether, taking the evidence—"both direct and circumstantial, together with the reasonable inferences to be drawn therefrom"—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir.), *cert. denied,* 475 U.S. 1128, 106 S.Ct. 1657, 90 L.Ed.2d 199 (1986). Considering the testimony of Gwendolyn Davis, the accounts given by Wichita police, and the physical evidence presented at trial, we find evidence to support the following version of events urged by the government.

In January 1993 the defendant, Gwendolyn Davis, Lourdes Collington, and a man identified as "Raymond" met in New York City. Gwendolyn Davis had travelled to the meeting from Wichita, Kansas, while the other participants lived in New York. The meeting concerned a scheme to sell cocaine in Wichita. As part of that scheme, Lourdes Collington and Gwendolyn Davis picked up a quantity of cocaine from defendant and "Raymond" and transported it by bus from New York to Wichita. Defendant also travelled to Wichita and was waiting for Ms. Davis and

* The Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation.

Ms. Collington when they arrived there. All, except Ms. Davis, stayed at a house Ms. Davis was renting at 823 S. Belmont in Wichita. Ms. Davis herself stayed elsewhere. When the Wichita police eventually searched 823 S. Belmont on January 21, 1993, they found a substantial amount of cocaine in various locations around the house, a cocaine cutting agent, drug scales and packaging materials, and $750 in cash.

Ms. Davis testified that after the group arrived in Wichita she contacted Wilbert and James Shaw of 1003 S. Topeka about supplying the Shaws with cocaine. She further testified that on at least two occasions, once during the early morning hours of January 21, 1993, and once approximately a week before that, she and defendant drove to 1003 S. Topeka to complete cocaine sales and that defendant entered the house with her and participated in the transactions. The Wichita police had independently staked out 1003 S. Topeka to investigate suspected drug activity. As a result, Detective Stinson of the Wichita Police Department largely confirmed Ms. Davis' account of the visit by defendant and Ms. Davis to 1003 S. Topeka in the early morning of January 21, 1993.

Defendant contends that he did not participate in any drug scheme but went to Wichita only in pursuit of a legitimate job. He contends that he merely was working as a driver for Ms. Davis in her escort business. As our recounting above indicates, however, under the applicable standard of review there is sufficient evidence to sustain his convictions.

## II. Admission of Coconspirator Statements

■ Defendant also contends that the district court improperly denied his motion for judgment of acquittal under Fed.R.Crim.P. 29(a), 834 F.Supp. 1282. He bases this contention on the argument that the district court improperly admitted certain testimony of Gwendolyn Davis as coconspirator statements under Fed.R.Evid. 801(d)(2)(E). This is not a proper basis for a Rule 29(a) motion. The proper basis for a Rule 29(a) motion for judgment of acquittal is a claim of insufficient evidence in light of the elements of the offense charged. *See* Fed.R.Crim.P. 29(a);

*United States v. Johnson,* 911 F.2d 1394, 1399 (10th Cir.1990), *cert. denied,* 498 U.S. 1050, 111 S.Ct. 761, 112 L.Ed.2d 781 (1991); *United States v. Appawoo,* 553 F.2d 1242, 1244 (10th Cir.1977); *Lowther v. United States,* 455 F.2d 657, 662 (10th Cir.), *cert. denied,* 409 U.S. 857, 93 S.Ct. 139, 34 L.Ed.2d 102 (1972); *see also United States v. Ellison,* 684 F.2d 664, 665 (10th Cir.) (pointing out that prosecutorial misconduct is not grounds for action under Rule 29(a)), *vacated on other grounds,* 722 F.2d 595 (10th Cir. 1982). We have already found sufficient evidence to sustain defendant's convictions in Section I above.

Defendant's objection to admission of Ms. Davis' testimony amounts to a simple hearsay objection. Because defendant did in fact raise an independent hearsay objection at trial, we briefly will address the substance of the objection here.

Defendant does not specifically identify the statements in Ms. Davis' wide-ranging testimony to which he objects. We note initially that most of the testimony was admissible as Ms. Davis' own observations or as involving statements of defendant himself which are admissible under Fed.R.Evid. 801(d)(2)(A). Only a portion of the testimony consisted of coconspirator statements which depend upon Fed.R.Evid. 801(d)(2)(E) for admissibility.

■ Pursuant to Rule 801(d)(2)(E), we have established a three-part test for admission of coconspirator statements as nonhearsay. "The court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *Johnson,* 911 F.2d at 1403. We review the trial court's findings of fact with respect to these points only for clear error. *United States v. Caro,* 965 F.2d 1548, 1557 (10th Cir.1992).

■ Defendant argues that the procedure followed by the trial court in admitting the coconspirator statements in Ms. Davis' testimony was improper. The trial court admitted the statements without first making any specific determination about the existence of

a predicate conspiracy. This is not the preferred course. The strongly preferred order of proof in determining the admissibility of an alleged coconspirator statement is first to hold a "*James* hearing," *see generally United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), outside the presence of the jury to determine by a preponderance of the evidence the existence of a predicate conspiracy. *Caro*, 965 F.2d at 1557 n. 2; *United States v. Hernandez*, 829 F.2d 988, 993–94 (10th Cir.1987), *cert. denied*, 485 U.S. 1013, 108 S.Ct. 1486, 99 L.Ed.2d 714 (1988); *James*, 590 F.2d at 582; *see Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987) (emphasizing that the correct standard of proof of preliminary facts such as the existence of a predicate conspiracy is proof by the preponderance of the evidence); *United States v. Perez*, 989 F.2d 1574, 1577 (10th Cir.1993) (same). The reason for this preference is that if the court provisionally admits a statement with the idea that the statement and other evidence will later "connect up" showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact "connect up." *See Hernandez*, 829 F.2d at 993; *James*, 590 F.2d at 581–82.

■ The order of proof described above, however, remains a *preference*. The trial court retains some discretion, *Hernandez*, 829 F.2d at 994, and we find no abuse of that discretion in this case. At trial a significant amount of evidence suggesting a predicate conspiracy was presented *before* Ms. Davis' coconspirator statement testimony potentially rendering a *James* hearing unnecessary. Perhaps with this in mind, defense counsel effectively declined the opportunity for a *James* hearing when it was offered.[1] Finally, the defendant suffered no prejudice be-

cause the preponderance of the evidence over the course of the trial—including the coconspirator statements themselves, other testimony by Ms. Davis, testimony by Wichita police officers, and the physical evidence found at 823 S. Belmont—did in fact "connect up" showing the existence of a predicate conspiracy. Defendant also objects to the coconspirator statements in Ms. Davis' testimony on the ground that their admission violates defendant's rights under the Confrontation Clause of the Sixth Amendment. This argument amounts to a suggestion that we overrule the Supreme Court's decision in *Bourjaily*. In *Bourjaily* the Court held that, because admission of coconspirator statements is a firmly rooted hearsay exception, it does not present Confrontation Clause problems. 483 U.S. at 181–84, 107 S.Ct. at 2781–84 (citing *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980)). As the trial court commented, we "anxiously await [defense counsel's] appearance before the Supreme Court" on this point. As for now, *Bourjaily* is the law and we are bound by it.

### III. Competence of Court Interpreter

Defendant finally argues that the trial court erred in refusing to replace the court-appointed interpreter pursuant to defendant's objection.[2] The government urges, however, that defendant did not sufficiently preserve the issue of translator competence for appellate review because defense counsel made a general objection to the interpreter rather than making contemporaneous objections pointing to specific problematic translations.

■ Though they are preferable, we do not require specific, contemporaneous objections to mistranslations before we will review a claim of translator incompetence.[3] We do

---

1. With regard to defense counsel's objection to the admission of the coconspirator statements, the trial judge said: "Your objection [which at trial was based on a Sixth Amendment argument] is preserved. The question is do we need to have a hearing outside the presence of the jury." Defense counsel replied: "No, I don't believe we do."

2. The trial court determined that an interpreter for defendant, whose primary language is Span-

ish, was necessary. The interpreter was used only during defendant's testimony.

3. This rule holds true where, as here, the defendant makes a broad claim of translator incompetence. Our conclusion might be different where a defendant's complaint on appeal amounts to the more specific claim that a particular, key portion of testimony was mistranslated. We reserve judgment for such individual cases.

not require defense counsel and others in the court to be competent to analyze the translator's performance line-by-line. The role of a translator, after all, is to bridge any language gap which might exist. Therefore, a general objection to translator competence may be sufficient to preserve the issue on appeal if it represents a good faith effort by defense counsel to address perceived translation problems. *Cf. United States v. Paz*, 981 F.2d 199, 201 (5th Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2378, 124 L.Ed.2d 282 (1993); *United States v. Moya–Gomez*, 860 F.2d 706, 740 (7th Cir.1988), *cert. denied,* 492 U.S. 908, 109 S.Ct. 3221, 106 L.Ed.2d 571 (1989); *Morales–Gomez v. United States*, 371 F.2d 432, 433 (10th Cir.1967).

■ We find defendant's objection to translator competence in this case, though somewhat generalized, to have been sufficient. Several questions into defendant's testimony, counsel for the government herself objected to exchanges taking place between defendant and the translator saying: "the witness needs to answer the question asked; and if there's a question as to what the question is—I mean, there's too much interpretation going on back and forth." The trial court responded that it did not see a problem, whereupon defense counsel interjected saying: "Your Honor, I think the problem is that [the defendant is] from Santo Domingo and they speak a little faster and I think this interpreter is having some difficulty. We would request that [an interpreter suggested by the defendant] be able to interpret." The trial court reiterated that it would allow the appointed translator to continue. The translator attempted to explain that his discussion with the witness was merely to clear up confusion regarding a preliminary question as to what sports league defendant participated in. Defense counsel then asked for permission to approach the bench. Outside the hearing of the jury, the following exchange took place:

Defense counsel: "Your honor, I'd like to go on record. I don't feel comfortable with this translator. I don't think we're getting the full translation in his exact words and I would like an exact transla-

tion, not the interpreter's summary of what this witness has testified to."

The Court: "Do you speak Spanish?"

Defense counsel: "No."

The Court: "How do you know you're not getting the exact translation?"

Defense counsel: "Well, I don't, except I have interviewed this person before with [the defense's own translator] and I've seen how—the response I get from [that translator] and it's much more detailed than what I'm getting here."

Under these circumstances, defendant sufficiently and in good faith preserved the issue of interpreter competence for appellate review.

■ Having made this determination, we turn to the substance of defendant's objection. We review the trial court's determination with respect to the appointment and competence of an interpreter only for an abuse of discretion. *Paz*, 981 F.2d at 200. Though as outlined above there is no general requirement that defense counsel contemporaneously object to specific mistranslations, the trial record still must sufficiently indicate translator incompetence for meaningful review to occur. *Morales–Gomez*, 371 F.2d at 433. Such indication may come in a variety of ways which we decline to specifically delineate. However, in this record we find no sufficient indication of interpreter incompetence to compel the conclusion that the trial court abused its discretion in failing to replace him.

Defense counsel based his formal objection to the interpreter on the fact that answers he had received from defendant in previous interviews were "much more detailed than what I'm getting here [at trial]." There are several other exchanges in the record which are potentially evidence of interpreter problems. In several instances "conversations" between defendant and the interpreter took place before the interpreter provided defendant's answer to a question. In these instances, however, a coherent answer to the question posed was always given. In fact, as the trial court pointed out, such exchanges could be indications that the interpreter simply is taking care to correctly convey defendant's meaning. In at least one instance,

defendant gave an answer which did not seem to fit the question posed by defense counsel.[4] However, this occurred only regarding a preliminary matter and is not by itself evidence of any serious problems with translation.

We also take into account that there were several instances in which defendant answered questions before they were translated,[5] indicating at least some ability himself to monitor the questions and answers as conveyed by the interpreter. Further, the trial court clearly was sensitive to potential translation problems. At one point the court stopped proceedings where it appeared that defendant had given an answer the translation of which was cut off by another question. The court took care to ensure that the full answer was translated. Finally, defendant's testimony as a whole presents a coherent picture consistent with the defense's version of events as presented through the trial. In light of these potential safeguards and because the record itself indicates only minimal specific problems with translation, we find no abuse of discretion by the trial court in declining defendant's request for a new translator.

## IV. Conclusion

We find sufficient evidence to sustain defendant's convictions, no abuse of discretion in the trial court's admission into evidence of coconspirator statements presented by Gwendolyn Davis, and no abuse of discretion in the trial court's refusal to replace the court-appointed interpreter. Defendant's convictions are **AFFIRMED.**

---

**4.** The translated exchange in question between defense counsel and defendant proceeded as follows:

> Q: "And how long did you live in Santo Domingo before you moved to the United States?"
> A: "I also lived there."

**5.** We note here three examples from the record. At one point defense counsel asked defendant: "Did you ever see any cocaine in that house when you were there?" Before the translator conveyed the question to defendant in Spanish, defendant answered, "No." At another point, pursuing questions regarding Lourdes Collington's presence in Wichita, the prosecutor asked: "So she had been living here two or three years, is that what you're saying?" Before the question was translated defendant replied: "This is what she told me." Finally, the record indicates that the prosecutor asked defendant: "Do you know whether there were want ads in the paper for drivers?" Before translation defendant replied, "No."