**UNITED STATES COURT OF APPEALS**
**Filed 4/10/96**
**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MANUEL ANGEL LEO,

    Defendant-Appellant.

No. 95-2113
(D.C. No. 94-130 LH)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **EBEL,** Circuit Judge, **McWILLIAMS,** Senior Circuit Judge, and **LUCERO**, Circuit Judge.

After examining the briefs and appellate record, this panel on January 19, 1996, determined unanimously that oral argument would not materially assist the determination of this appeal and ordered the case to be submitted without oral argument. *See* Fed. R. App. 34(a); 10th Cir. R. 34.1.9.

Manuel Angel Leo and seventeen others were charged in a five-count indictment with

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

various drug offenses. Leo was charged in Count 1 of the indictment with conspiring from January 25, 1994 to March 15, 1994 with his co-defendants to possess and distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846. All defendants were also charged in Count 1 with aiding and abetting each other in the conspiracy, in violation of 18 U.S.C. § 2. In Count 3 of the indictment, Leo was charged with unlawfully possessing, with an intent to distribute, 50 kilograms of marijuana on February 4, 1994, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2.

As of the date of Leo's trial, ten of Leo's co-defendants had pled guilty to one or more counts; five had not been arrested; one had his case dismissed under an agreement whereby he pled guilty to another charge; and the case against the seventeenth defendant was still pending. Leo had pleaded not guilty and stood trial. The jury convicted him on both counts. The district court sentenced Leo to imprisonment for 46 months on each count, the two sentences to be served concurrently. Leo appeals. We affirm.


THE WIRETAP

On February 1, 1994, the district attorney for the Second Judicial District for the State of New Mexico filed an application with the district court for the County of Bernalillo, New Mexico for an order authorizing interception of oral communications on a cellular telephone being then used by one Jose Luis Romero. The application was supported by a 33-page affidavit of James Torres, a police officer employed by the City of Albuquerque Police Department. On the same day, the state district court entered an order authorizing the

interception of oral communication to and from the cellular phone used by Jose Luis Romero (the "wiretap order").

On March 3, 1994, the state district attorney filed with the same court an application for an order authorizing the continuation of the wiretap. That application was supported by a 7-page affidavit of Detective Torres. The state district court entered an order authorizing the continuation of the wiretap that same day.

Prior to trial, Leo filed a motion to suppress the use at trial of all telephone interceptions taken pursuant to the wiretap order of February 1, 1994, as well as the "fruits" obtained from the use of such interceptions. In the motion to suppress, Leo's counsel stated that pursuant to the wiretap order of February 1, 1994, certain conversations, presumably between Romero and Leo, were intercepted, resulting, *inter alia,* in a search of Leo's residence on February 9, 1994, and the seizure of certain items found therein. Counsel further alleged that the wiretap order was not in conformity with federal wiretap statutes, in that the affidavit of Detective Torres did not demonstrate that other investigative procedures were unavailing, as required by 18 U.S.C. § 2518(1)(c), and the order itself failed to identify Leo by name, as required by 18 U.S.C. § 2518(4)(a).

Contrary to counsel's assertions, the 33-page affidavit of Detective Torres in support of the February 1, 1994 order was in considerable detail, and for some six pages Detective Torres outlined the need for a wiretap order and explained why other investigative techniques had been, and would continue to be, unavailing. We have previously held that the government does not have "to exhaust conceivable investigative procedures before resorting to wire tapping."

United States v. *Apodaca*, 820 F.2d 348, 350 (10th Cir. 1987), *cert. denied, Apodaca v. United States,* 484 U.S. 903 (1987). Further, the requirement of exhausting normal investigative methods must be viewed in a "common sense fashion." *United States v. Nunez*, 877 F.2d 1470, 1472 (10th Cir. 1989), *cert. denied, Nunez v. United States,* 493 U.S. 981 (1989). Accordingly, we conclude that the affidavit amply supports the state district court's finding that "normal investigative procedures have been tried and have generally failed, and that if such investigative procedures were tried further they would fail or be ineffectual."

We turn next to counsel's argument regarding the wiretap order's failure to identify Leo by name. The application for a wiretap order, the affidavit in support thereof, and the court order of February 1, 1994, authorizing a wiretap, all referred to a wiretap of a cellular phone then being used by one Romero. Leo was not mentioned in any of those documents, and counsel argues that such is fatal. We disagree. The failure of the government to identify the defendant by name does not, of itself, render the wiretap authorization invalid. *United States v. Armendariz*, 922 F.2d 602, 608-9 (10th Cir. 1990), *cert. denied, sub nom. Aguirre v. United States,* 502 U.S. 823 (1991). In this case, the wiretap was on Romero's phone, he being a "target," and, as indicated, he was "named." As we understand it, Leo's phone was not tapped. Given all the circumstances, we conclude that in this case, as in *Armendariz*, "all of the requisite statutory factors necessary to support the authorization were present, and the failure to name [Leo] in no way detracts from the sufficiency of those factors." *Id.* at 608 (internal quotes omitted).

Counsel also makes a passing reference in this Court to the continuation application,

affidavit and order of March 3, 1994, suggesting that such were also insufficient. So far as we can tell, the motion to suppress in the district court was based on the alleged insufficiency of the order of February 1, 1994, and there was no challenge, as such, in the district court to the continuation order of March 3, 1994. Accordingly, we are not here concerned with that order.

## THE SEIZURE

As indicated, on February 9, 1994, there was a confrontation between the police and Leo at the latter's residence. The officers had followed four individuals who were a part of the conspiracy to Leo's home. The four individuals were stopped before they could enter the house. The police then met Leo at the door of his home. They asked if they could search his home to see if others were inside. Leo consented, and Romero was found hiding in the bathroom. Leo was then asked by the officers if they could conduct a more thorough search of the apartment, and Leo again consented. Leo explained at trial that he consented to the search because he had nothing to hide. The search disclosed $80,000 in U.S. currency, which Leo claimed was not his, a small amount of marijuana, which Leo said was his, a triple-beam scale, duct tape and phone bills. After the search, the police officers left the apartment. No one was arrested at that time.

By his motion to suppress, Leo also sought to prevent the use at trial of all evidence relating to his confrontation with the police at his home on February 9, 1994, arguing that such

was in violation of his Fourth Amendment rights.[1]  The district court, after hearing, denied that request finding that Leo was not in custody at that time, and that he voluntarily consented to the search.  We agree.  A warrantless search does not offend the Fourth Amendment in instances where the party exercising control over the area searched voluntarily consents. *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).  The voluntariness of the consent is determined according to the totality of the circumstances.  *Id.* at 233.  In this case, the circumstances indicate that Leo's consent was freely and voluntarily given.  Leo consented to the search because, as he testified, he had nothing to hide.  There was no suggestion of coercive police action.  And, of course, the police did not arrest Leo, or anyone else, on that date.

ROMERO AND OCHOA

Apparently, at trial defense counsel considered calling co-defendants Romero and Sergio Ochoa as defense witnesses.  By that time, Romero and Ochoa had pled guilty and were awaiting sentence.  The record on this particular matter is most unclear, but counsel states in his brief that he requested that if Romero and Ochoa testified as defense witnesses, he wanted an immediate ruling from the trial court that the government, on cross-examination, would be limited to inquiry within the scope of the direct examination and within the scope of the indictment to which each of them had pled guilty.  Counsel also suggests that the government used the threat of rejecting Romero's and Ochoa's guilty pleas to discourage them

---

[1]  Leo also argued that the search was "fruit" of the illegal wiretap.  Since we conclude that the wiretap order was valid, we need not address this argument.

from testifying. In any event, the district court declined to give such a limiting order, at that time, and such is claimed to be reversible error. We disagree. So far as we can tell, after the district court stated it would not, at that time, limit cross-examination, this entire matter was dropped, and neither Romero nor Ochoa was even called as a defense witness. Moreover, Leo never proffered to the trial court what evidence he intended to elicit from the two witnesses, if called, which would be helpful to his defense, nor explained how a limitation on the government's cross-examination would factor into Romero's independent decision whether to testify or to invoke his Fifth Amendment privilege against self-incrimination. We note that the record reflects that Romero's decision not to testify was based upon advice of his counsel, and not any prosecutorial coercion. In any event, the record before us does not show that Leo was denied a "fair trial," as claimed by counsel.

## SUFFICIENCY OF EVIDENCE

Counsel's final argument in this Court is that the evidence is insufficient to support either of Leo's convictions. Again, we disagree. Certainly, the testimony of a co-defendant, Randy Dvorak, who pleaded guilty and testified as a government witness at Leo's trial, indicated that Leo was a party to this conspiracy. Dvorak's testimony also showed that Leo was a participant in the transaction of February 4, 1994, which formed the basis for Count 3 of the indictment. And there was much more evidence tending to show that Leo was very much involved in a rather extended drug operation involving the transportation of large

quantities of marijuana in Arizona, New Mexico and Texas. The jury simply disbelieved Leo's testimony that he was just an "innocent bystander."

Judgment affirmed.

Entered by the Court

Robert H. McWilliams
Senior Circuit Judge