**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 30 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

SALVADOR OROZCO-PENA, also
known as Salvador Orozco,

     Defendant-Appellant.

No. 97-1187
(D.C. No. 96-CR-386-S)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **BRORBY**, **EBEL** and **KELLY**, Circuit Judges.

     Salvador Orozco-Pena appeals his criminal conviction and sentence. We

affirm.

**BACKGROUND**

     After receiving information from two confidential informants, New Mexico

narcotics police officer Heriberto Flores ("Officer Flores") traveled to Aurora,

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Colorado to investigate reports of cocaine trafficking. (R. II at 36-37.) Working with the Aurora police department, Officer Flores and his informants set up a meeting with the suspected drug dealers. (Id. at 37-38.) Defendant-appellant Salvador Orozco-Pena ("Orozco-Pena"), using the name "Chava," met with Officer Flores and his informants at the designated site and told them to follow him. (Id. at 42-43.) Orozco-Pena drove to a residence in Aurora. (Id. at 43.) He told Officer Flores and the two informants to go inside. (Id.) Once inside, he negotiated with them about the sale of several kilograms of cocaine at $19,500 a kilogram. (Id. at 44.) Another individual named Victor was present, but Orozco-Pena handled the negotiations. (Id. at 45, 52.) Officer Flores advised Orozco-Pena that they had enough cash to buy three kilograms for $57,000. (Id. at 44-45.) Orozco-Pena said that he could supply three kilograms. (Id. at 45.)

Officer Flores said he wanted to see one kilogram before buying. (Id. at 46.) Orozco-Pena called someone and then told Officer Flores that an individual who was in Denver would be bringing the kilogram over shortly. (Id.) An individual in a red Suzuki arrived, came into the house, and told Orozco-Pena "I have it with me." (Id. at 47.) That individual, later identified as Jesus Quinones-Baeza ("Quinones-Baeza"), (id. at 159-60, 174) handed the bag he was carrying to Orozco-Pena, who told Officer Flores to come upstairs if he wanted to see it. (Id.

- 2 -

at 47.)  Orozco-Pena, Quinones-Baeza, Officer Flores, Victor, and one of the informants went upstairs.  (Id. at 48)

By the time Officer Flores got upstairs, Orozco-Pena had a package labeled "Rolex" in black magic marker in a drawer.[1]  (Id.)  He told Victor to get a knife to cut the plastic wrapping.  (Id.)  Officer Flores cut into the package with his own knife and saw a white material whose characteristics were consistent with cocaine and which he thought was cocaine.  (Id. at 48-49.)  Officer Flores told Orozco-Pena that he would call a companion to bring the money to consummate the deal.  (Id. at 49.)  Orozco-Pena and Quinones-Baeza responded that the other kilograms were packaged the same way and were no more than 30 minutes away.  (Id. at 49, 79.)

After leaving the residence, Officer Flores met with waiting police officers, who drafted a search warrant for the residence based on his information.  (Id. at 50.)  When the warrant was executed, however, no cocaine was found in the residence.  (Id. at 75.)  The red Suzuki left but was followed by police.  (Id. at 105.)  Although the tailing officers lost the Suzuki, they were able to trace it by its temporary license tag.  (Id. at 106.)  The registration information led officers to a trailer park, where they saw the red Suzuki.  (Id. at 106-07.)  When an officer

---

[1]  Officer Flores testified that "Rolex" in this context is a designation of the operation that owned that particular shipment of cocaine.  (R. II at 52.)

was given permission to enter the trailer on the lot to which the Suzuki was registered, a woman later identified as Maria Nieto threw a plastic bag out the door.  (Id. 162-63.)  The officer saw what appeared to be two bricks of narcotics fall from the bag.  (Id. at 164.)  Additional officers recovered a plastic bag and two packages marked "Rolex" from behind the trailer.  (Id. at 122, 129.)  In addition, a search of Quinones-Baez's apartment yielded white powder in a plastic wrapping with a "R" and an "O" on it. (Id. at 113-14, 161.)  The contents of all three packages tested positive for cocaine.  (Id. at 201.)

Orozco-Pena was tried before a jury and found guilty of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 & 841 and of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841 & 2.  (Id. at 304-05.)  He was sentenced to 78 months' imprisonment.  (R. I at 11.)  On appeal, he contends that his counsel was ineffective, that the district court improperly admitted statements by his alleged co-conspirators, and that there was insufficient evidence to support his conviction of possession of a controlled substance.[2]

---

[2]  Orozco-Pena raised another issue -- whether the district court abused its discretion by allowing the government to reopen its case to admit exhibits -- but in his opening brief asked that this issue be withdrawn.  (See Aplnt's Br. at 6.) Consequently, we do not address that question.

**DISCUSSION**

**A. Ineffective Assistance of Counsel**

We generally do not address claims of ineffective assistance of counsel on direct appeal. See United States v. Gallegos, 108 F.3d 1272, 1279 (10th Cir. 1997). Such claims usually benefit from the development of a factual record. See id. at 1280. Because defendant's arguments involve factual issues that do not appear in the appellate record, this is not the unusual case that should be heard on direct appeal. Cf. id. Consequently, we dismiss the ineffective assistance of counsel claim without prejudice.

**B. Admission of Co-Conspirator's Statements**

Orozco-Pena also challenges the admission of statements made by Maria Nieto and Jesus Quinones-Baeza under Federal Rule of Evidence 801(d)(2)(E). We review the factual findings in support of the admission of Rule 801(d)(2)(E) statements for clear error. See United States v. Lopez-Gutierrez, 83 F.3d 1235, 1242 (10th Cir. 1996).

Under Rule 801(d)(2)(E), before admitting a statement by an alleged co-conspirator, the district court "must determine by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the defendant were members of the conspiracy; and (3) the hearsay statements were made in the course of and in furtherance of the conspiracy." Id. In order to find the existence of a

conspiracy, a district court may not rely solely upon the statements at issue; there must be some evidence of a conspiracy independent of the statements. See id. "Such independent evidence may be sufficient even when it is not 'substantial.'" Id. (citation omitted).

Orozco-Pena contends that the statements were erroneously admitted because the prosecution did not present any independent evidence of a conspiracy involving Orozco-Pena and the declarants. To the contrary, the district court did not clearly err in finding that the government presented independent evidence of a conspiracy involving Orozco-Pena, Quinones-Baeza and Nieto. (See R. II at 186-94.) Quinones-Baeza responded to Orozco-Pena's call to bring the cocaine, and tracing Quinones-Baeza's vehicle led investigators to the trailer park where Maria Nieto was seen throwing out two bricks of cocaine. The package observed by Officer Flores and the packages of cocaine discovered at the trailer park were clearly marked "Rolex," and the cocaine found at Quinones-Baeza's apartment was marked with an "R" and an "O." This is independent evidence of a conspiracy involving Orozco-Pena and the declarants.

## C. Sufficiency of the Evidence

Finally, Orozco-Pena contends that there is insufficient evidence to convict him of possession with intent to distribute cocaine and conspiracy to possess with intent to distribute cocaine. In reviewing the sufficiency of the evidence,

generally we examine the entire record to determine whether a reasonable jury could find the defendant guilty beyond a reasonable doubt and take all evidence in the light most favorable to the government.  See United States v. Urena, 27 F.3d 1487, 1489 (10th Cir. 1994).  Because Orozco-Pena did not move for a judgment of acquittal based on the insufficiency of the evidence of possession, see Fed. R. Crim. P. 29(a), however, in this case we review for plain error, see Fed. R. Crim. P. 52(b).

Whatever the standard of review, the government presented sufficient evidence to sustain Orozco-Pena's convictions.  The record shows that Orozco-Pena conducted the negotiations for the drug deal and handled the cocaine at the residence.  Orozco-Pena's arguments regarding the doctrine of constructive possession ignore the fact that Orozco-Pena himself had the cocaine during the negotiations with Officer Flores.

The government notes that the judgment of conviction Orozco-Pena attached to his appellate brief states incorrectly that he pleaded guilty.  The record shows that Orozco-Pena was convicted following a jury trial.  Consequently, although we AFFIRM the district court's judgment on the merits, we REMAND with directions that the district court vacate its judgment and enter a judgment which reflects that Orozco-Pena was convicted by a jury.

The mandate shall issue forthwith.

                    ENTERED FOR THE COURT


                    David M. Ebel
                    Circuit Judge