**UNITED STATES of America, Plaintiff,**

v.

**James WALTON, et al., Defendants.**

No. 95–20086.

United States District Court,
D. Kansas.

July 10, 1996.

R. Bruce Kips, Fairway, KS, for James Walton aka Petie aka Tim Olds aka Jamal Thomas aka Jamarl Thomas aka Tony Adams, defendant.

Richard L. Carney, Kansas City, KS, for Marcus Hall aka Scrap, defendant.

James T. George, Lawrence, KS, Nancy F. Orrick, Olathe, KS, for John Thompson aka J.B., defendant.

Charles R. Harvey, Overland Park, KS, for Desi Lewis aka D.B. aka Dough Boy, defendant.

Carl E. Cornwell, Cornwell & Edmonds, Overland Park, KS, Thomas J. Notestine, Kansas City, MO, for Sylvester Anderson aka Chilly, defendant.

John P. O'Connor, Niewald, Waldeck & Brown, Kansas City, MO, Kimberley K. Kellogg, Leawood, KS, for Robert White aka Bee Bop, defendant.

Robert White, Kansas City, MO, pro se.

Robert A. DeCoursey, Kansas City, KS, for Gregory Jordon.

Gregory Jordon, Kansas City, KS, pro se.

J. Steven Schweiker, Overland Park, KS, for Donna Bishop aka Big Mama, defendant.

Donna Bishop, Kansas City, MO, pro se.

Theodore J. Lickteig, Lenexa, KS, for Nicole Stewart aka Tina Wilson aka LeShell Town, defendant.

David S. Rauzi, Law Office of David S. Rauzi, Overland Park, KS, Carlene Merritt, Kansas City, MO, for Carlene Merritt aka Tyler Thompson, defendant.

John C. Donham, Overland Park, KS, Larry C. Pace, Office of Federal Public Defender, Kansas City, MO, for Anjanette Richardson.

Anjanette Richardson, Kansas City, MO, pro se.

John K. Sherk, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Warren Phillips aka Nappy, defendant.

Warren Phillips, Columbus, GA, pro se.

Robert W. Manske, Olathe, KS, for Anthony Davis.

Anthony Davis, Kansas City, MO, pro se.

Kim Martin Fowler, Office of United States Attorney, Kansas City, KS, for U.S.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This is a criminal action in which the defendants have been charged in a 16 count indictment with conspiracy to distribute cocaine and cocaine base in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 and with conspiracy to launder money in violation of 18 U.S.C. § 1956(a)(1)(A)(i) & (B)(i) and 18 U.S.C. § 1956(h). On June 17, 1996, a hearing was held concerning Defendant James Walton's motion to suppress and Defendant Carlene Merritt's motion to sever both of which concern a letter written by Defendant Walton which he delivered into the hands of the authorities. On June 14, 1996, Defendant Bishop filed a motion seeking reconsideration of the court's denial of her motion to suppress wiretap communications. Having considered the arguments presented by the parties, the court, for the reasons discussed below, denies Defendant Walton's motion to suppress (Doc. # 334), Defendant Merritt's motion to sever (Doc. # 421) and Defendant Bishop's motion to reconsider (Doc. # 463).

### I. Motion to suppress and motion to sever.

#### A. Facts.

During the relevant time period, Defendant James Walton was being held at Corrections Corporation of America's Leavenworth Detention Center ("CCA"). CCA has a written policy forbidding detainees from directly passing anything to a visitor. Pursuant to this policy, all detainees must apply and get written permission from the head of security in order to pass any items to visitors. CCA does not have any written policy indicating it has the right to open a detainee's outgoing legal mail before it is transferred to a visitor.

On March 18, 1996, Defendant Walton filed a written request seeking permission to "send some legal paper out during my visit." Although it does not identify the visitor, the request was granted on March 19, 1996. On that same day, Defendant Carlene Merritt was visiting Defendant Walton at CCA. During her visit, Defendant Walton presented a copy of the document granting his request to officer Jeffrey Miller who was working visitor's duties. Along with the copy of the permission, Defendant Walton handed officer Miller an open legal size envelope containing some papers. Officer Miller passed the envelope to Lt. Robert Tesch to take to the front office so that Defendant Walton's visitor, Defendant Merritt, could pick it up as she left.

While walking to the front office, officer Tesch noticed that the envelope was open, that the envelope was addressed to Defendant Walton, and that the envelope did not have any markings indicating that it was legal mail. Officer Tesch looked in the envelope and noticed that it contained yellow legal paper which was not consistent with what he believes constitutes legal mail. Officer Tesch

testified that he decided to examine the papers inside the envelope in order to determine whether they referenced activities like escape plans, extortion, or blackmail. Upon removing and examining the papers contained in the envelope, officer Tesch immediately concluded that the papers were a letter ("Letter"). After noticing that the Letter began with "What's up," officer Tesch further concluded that the Letter was not intended for Defendant Walton's lawyer and, therefore, was not legal mail. Upon further examination of the Letter, officer Tesch noted that it mentioned numerous people by their "street names," discussed illegal drugs like cocaine, and described how the author wanted the intended recipient to testify. These observations reinforced officer Tesch's conclusion that the contents of the envelope did not constitute legal mail.

Officer Tesch photocopied the Letter and returned it to officer Miller with the instructions that it be returned to Defendant Walton because the Letter did not constitute legal mail. Officer Miller returned the envelope and its contents to Defendant Walton and informed him that he would have to mail it through normal channels because the Letter did not constitute legal mail. It is unknown whether Defendant Walton mailed the Letter or whether Defendant Merritt or anyone else ever received it.

### B. Discussion.

#### 1. Motion to suppress.

Defendant Walton seeks suppression of the Letter (Bates stamp # 09805–09812) seized from him while detained at CCA based on four arguments: the seizure of the Letter constituted an illegal search and seizure in violation of his 4th Amendment rights; officer Tesch's conduct violated CCA's rules concerning inspection of detainee's correspondence; the Letter is inadmissible because it was not written in furtherance of the alleged conspiracy; and the Letter's prejudicial effect outweighs its probative value. The Government contends that the Letter does not constitute legal mail and that the defendant did not have a legitimate expectation of privacy in the Letter when he knowingly and voluntarily handed it to officer Miller in an open envelope without any markings indicating it was legal mail. Moreover, the Government also points to the fact that all CCA inmates are aware that nothing can be passed to visitors without inspection or approval. Finally, the Government argues that Defendant Walton's Fed.R.Evid. 403 argument should be addressed in a motion in limine, not in a suppression motion.

#### a. Standard.

▮▮▮ In order to determine whether an individual's Fourth Amendment rights were violated by an illegal search or seizure, the movant must demonstrate (1) that he manifested a subjective expectation of privacy in the object of the challenged search and (2) that society is prepared to recognize his subjective expectation as objectively reasonable. *See U.S. v. Erwin*, 875 F.2d 268 (10th Cir. 1988) (citations omitted). "An expectation of privacy is a question of intent which may be inferred from words, acts, and other objective facts." *U.S. v. Austin*, 66 F.3d 1115, 1118 (10th Cir.1995) (quoting *U.S. v. Hernandez*, 7 F.3d 944, 947 (10th Cir.1993)). "... [G]iven the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope." *Bell v. Wolfish*, 441 U.S. 520, 557–58, 99 S.Ct. 1861, 1883, 60 L.Ed.2d 447 (1979) (citing *Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1219–21, 8 L.Ed.2d 384 (1962)).

#### b. Analysis.[1]

▮▮▮ The court believes that Defendant Walton did not have a reasonable expectation of privacy in the contents of the envelope. Four factors in combination indicate the unreasonableness of Defendant Walton's alleged subjective expectation that officer

---

1. At the outset, the court rejects Defendant Walton's third and fourth arguments. The defendant cites no authority and the court can find none to support his argument that the letter must have been written in furtherance of the conspiracy to be admissible. With respect to the defendant's Fed.R.Evid. 403 argument, the court believes that it should be raised at a later time in a motion in limine.

Tesch would not look inside and examine its contents: the envelope was not sealed; the envelope was not properly marked legal mail; the envelope was addressed to Defendant Walton, not his lawyer or the court; and Defendant Walton knowingly and voluntarily gave the envelope to officer Miller in such a condition. Those factors combined with the lowered expectation of privacy within a prison and with the fact that the contents of the envelope do not constitute legal mail[2] cause the court to conclude that society would not recognize Defendant Walton's alleged subjective expectation as objectively reasonable. As a result, the court concludes that Defendant Walton's Fourth Amendment rights were not violated when officer Tesch opened the unsealed envelope and read the Letter contained therein. The court also concludes that Defendant Walton's Fourth Amendment rights were not violated when officer Tesch photocopied the Letter before he had officer Miller return it.

There is another basis on which Defendant Walton's motion should be denied as well. Defendant Walton did not present any evidence indicating any improper motive behind officer Tesch's conduct or any resulting interference with Defendant Walton's right to counsel. Examining the facts of this case in light of the basic rule that control and management of penal institutions[3] lies within the sound discretion of the responsible administrative agencies, the court concludes that officer's Tesch's conduct constituted an isolated incident and, therefore, Defendant Walton's Fourth Amendment rights were not violated. *Penrod v. Furlong*, 42 F.3d 1406, 1406 (citing *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)); *Bledsoe v. Biery*, 992 F.2d 1222, 1222 (10th Cir.1993).

### 2. Motion to sever.

■ Defendant Merritt requests her case be severed pursuant to Fed.R.Crim.Pro 14 because Defendant Walton's Letter "... contains extremely damaging admissions, could be considered an attempt to obstruct justice, and implicates Defendant Merritt in the commission of the crimes charged in the indictment." Defendant Merritt argues that a limiting instruction would not alleviate the Letter's prejudicial effect against her because the Letter, as evidence, will go into the jury room with the jury during deliberations and because the Government could call officer Miller or officer Tesch to show that Defendant Merritt was the Letter's intended recipient. In essence, Defendant Merritt seems to argue, without citing any case law, that the letter should be excluded pursuant to the severance rule set out in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). In response, the Government argues that the Letter is not clearly inculpatory as to Defendant Merritt and that there is no evidence that Defendant Merritt ever received it. The Government also stated that it would be willing to discuss removing certain references in the Letter which indicate that Defendant Merritt was the intended recipient.

### a. Standard.

■ Whether to grant a severance is left to the sound discretion of the district court. *Zafiro v. United States*, 506 U.S. 534, 541, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993). In a conspiracy case like this one, there is a strong preference in favor of trying all of the alleged co-conspirators together. *United States v. Scott*, 37 F.3d 1564, 1579 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 773, 130 L.Ed.2d 669 (1995). However, Fed.R.Crim.Pro. 14 permits a court to order a severance of certain defendants if it appears that they would be prejudiced by being joined. Prejudice occurs when "there is a serious risk that a joint trial [will] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 540, 113 S.Ct. at 938. "Neither a mere allegation that defendant would have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' [of damaging evidence] is sufficient to warrant severance." *United*

---

2. Legal mail is mail from courts or attorneys. *See* 28 CFR § 540.19(a).

3. For the purposes of the Fourth Amendment, the court believes that CCA should be treated as a penal institution.

*States v. Levine*, 983 F.2d 165, 167 (10th Cir.1992).

*b. Analysis.*

■■■ Fed.R.Crim.Pro. 14 does not compel severance when the risk of prejudice is shown if the trial court, in its discretion, creates a remedy which abates the risk of prejudice. *United States v. Preston*, No. 95–40083–SAC, 1996 WL 254379, at *5 (D.Kan. April 5, 1996). Moreover, the Tenth Circuit has held that the *Bruton* severance rule should not be extended to co-defendant statements of admission, such as the Letter. *United States v. Hopkins*, 77 F.3d 493, 493 (10th Cir.1996). With those premises in mind, the court, in its discretion, concludes that any prejudice against Defendant Merritt caused by the Letter can be abated with an appropriate jury instruction indicating that the Letter can only be used against Defendant Walton. *Preston*, 1996 WL 254379, at *5; *Hopkins*, 77 F.3d at 493; *United States v. Chatman*, 994 F.2d 1510, 1513 (10th Cir.), *cert. denied*, 510 U.S. 883, 114 S.Ct. 230, 126 L.Ed.2d 185 (1993). The court also believes that certain redactions may be appropriate and, as a result, orders the parties to submit by the deadline for filing motions in limine suggestions concerning what parts of the Letter should be redacted. As a result, the court denies Defendant Merritt's motion to sever.

*II. Motion to reconsider.*

*A. Standard.*

■■■■ Under Fed.R.Civ.P. 59(e), a court, in its discretion, may reconsider an order if there is an intervening change in controlling law, if new evidence becomes available, or if the court determines that there is a need to correct clear error or prevent manifest injustice. *Floyd v. United States*, No. 95–2177–JWL, 1996 WL 42226 at *1 (D.Kan. Jan. 09, 1996) (citations omitted). A motion to reconsider is appropriate if the court has obviously misapprehended a party's position, the facts, or mistakenly has decided issues not presented for determination. *Id.* However, a Rule 59(e) motion is directed at reconsideration "of matters properly encompassed in a decision on the merits,

and not initial consideration." *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 451, 102 S.Ct. 1162, 1163, 71 L.Ed.2d 325 (1982).

*B. Discussion.*

■■■ Defendant Bishop seeks reconsideration of the court's order dated May 29, 1996, denying her motion to suppress evidence obtained pursuant to wiretaps based on the fact that the court's order failed to deal with the fact that certain statements contained in the affidavit in support of the wiretap applications were intentionally false or made in reckless disregard of the truth. Specifically, Defendant Bishop argues: (1) that Juan Harkness provided the Government with sufficient information to negate the necessity of the wiretaps; (2) that the presence of the remote controlled video camera located one block from the target of the wiretaps negates the Government's assertions that prolonged or regular surveillance of the subjects was not successful and that the nature of the neighborhoods where the subjects' primary activities were located foreclosed extensive physical surveillance; (3) that the information in the wiretap affidavits indicate that in lieu of wiretaps, the Government had sufficient probable cause to obtain search warrants for the target location as well as several other locations; and (4) that the wiretap affidavits erroneously state that subsequent to an intercepted conversation with Defendant Bishop, Mr. John Williams was arrested when he received five kilograms of cocaine when, in reality, Mr. Williams only received one kilogram of cocaine. In response, the Government argues that the information omitted did not destroy the probable cause for the wiretaps nor extinguish the need for the wiretaps.

The court recognizes that there are some discrepancies contained in the affidavits in support of the wiretaps which require explanation. However, the court reaches the same conclusion for the following reasons. First, Agent Paul Carrington, the author of the affidavit, testified that he based the five kilogram statement on information he received from an FBI agent who was involved in the investigation which led to the arrest of

Mr. Williams. In other words, the court believes that Agent Carrington had a good faith basis to make such a representation. Moreover, the court believes that whether Mr. Williams received one kilogram or five kilograms is inconsequential to Defendant Bishop's motion because such a minor mistake does not, as the defendant argues, demonstrate "a state of mind willing to deceive the court." Second, whether the Government had probable cause to obtain search warrants for certain locations, including the target of the wiretaps, before it obtained authorization to use wiretaps is not relevant because the applicant is not required to exhaust all normal investigative techniques before resorting to the wiretap. *United States v. Leo,* 82 F.3d 427, 427 (10th Cir.1996) (citing *United States v. Apodaca,* 820 F.2d 348, 350 (10th Cir.1987), *cert. denied,* 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 202 (1987)). Moreover, the defendant failed to show how search warrants would have provided the information the Government needed to indict the defendants. Third, the defendant's unsupported assertion concerning the remote controlled camera are insufficient to overcome Agent Carrington's detailed testimony regarding the limitations of the remote controlled camera.

The most difficult issue presented in the defendant's motion concerns Agent Carrington's failure to properly include and describe the information obtained from Juan Harkness. However, the court is convinced that even if the information from Mr. Harkness has been added to the wiretap affidavits, United States District Judge Earl E. O'Connor would still have authorized the wiretaps. Although he did mention the names of some of the members of the alleged conspiracy, Mr. Harkness was not able to provide key information concerning the scope of the organization, how the cocaine was transported from Los Angeles to Kansas City, or how the organization was laundering or distributing the profits from its illicit dealings. Moreover, Mr. Harkness indicated that he was no longer on goods terms with Mr. Walton and, therefore, could not be utilized as an informant.

Because the defendant's arguments do not indicate that the court committed clear error when it denied her motion to suppress, the court, upon further clarification, denies Defendant Bishop's motion to reconsider. *Floyd,* 1996 WL 42226 at *1.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Walton's motion to suppress (Doc. # 334), Defendant Merritt's motion to sever (Doc. # 421), and Defendant Bishop's motion to reconsider (Doc. # 463) are denied.

**IT IS FURTHER ORDERED** that the Government and Defendant Merritt attempt to reach a stipulation concerning what should be redacted from the Letter and failing same, submit proposals to the court by the deadline for filing motions in limine.

**IT IS SO ORDERED.**