**UNITED STATES of America, Plaintiff,**

v.

**German MONTALVO, et al., Defendants.**

**Cr. No. 94–360 (HL).**

United States District Court,
D. Puerto Rico.

April 5, 1995.

---

Ricardo R. Pesquera–Annexy, Orlando, FL, for defendant.

Mark Irish, U.S. Trial Atty., U.S. Dept. of Justice, Washington, DC, for U.S.

## OPINION AND ORDER

LAFFITTE, District Judge.

Before the Court is defendant German Montalvo's Motion to Suppress Title III Recordings and to Dismiss the Indictment. The government has opposed said motion. The Court granted defendant Montalvo until March 28, 1995 to reply to the government's opposition. As of this date, however, defendant has failed to file a reply. Therefore, the Court finds that the motion is ready for disposition.

## I. BACKGROUND

In June 1994, the Government applied for and received a court order authorizing the interception of wire communications. Said interception was requested as part of an investigation conducted by the Federal Bureau of Investigation (FBI) into a money-laundering operation in Puerto Rico. This probe resulted in the discovery of and investigation into related narcotics trafficking. It was said trafficking's proceeds which were laundered through the money-laundering organization. Defendant German Montalvo was found by the FBI to be a member of one of said narcotics trafficking organizations.

## II. DISCUSSION

Defendant Montalvo's first reason for the suppression of the government's recordings of its electronic surveillance is that the government's application and affidavit for the court's authorization of said surveillance was insufficient. Defendant argues that said affidavit failed to establish that the wire tapping was necessary in order to achieve the FBI investigation's goals. Second, defendant Montalvo claims that the court's order authorizing the electronic surveillance was an improper review of the government's application. Third, defendant argues that the recordings should be suppressed because the government's application failed to name defendant Montalvo. And fourth, defendant argues that because the government failed to provide defendant with timely notice of the electronic surveillance, said recordings should be suppressed.

Defendant Montalvo argues that the Court should dismiss the indictment as well. Defendant contends that after consideration of the above reasons, the Court will suppress the recordings, eliminating all evidence against defendant thereby compelling the dismissal of the indictment. Finally, defendant argues that the Court should hold an evidentiary hearing on this motion to suppress.

### A. Government's Application For The Authorization Of Electronic Surveillance

■ Under 18 U.S.C. § 2518(1)(c), the government's application for authorization to conduct wiretapping must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." Courts have interpreted section 2518(1)(c) to require the government to show a reasonable attempt to use other investigative procedures prior to its use of wiretapping. *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir.1989). A bare conclusory statement to this effect will not suffice. *Id.*

■ In evaluating the government's showing, the Court may consider the statements by an agent in his affidavit that are based in part upon said agent's special training. *Ashley*, 876 F.2d at 1072. "[T]he government does not need to exhaust all other investigative procedures before resorting to wiretapping.... Nor must ordinary techniques be shown to behave been wholly unsuccessful." *United States v. Abou–Saada*, 785 F.2d 1, 11 (1st Cir.1986) (citations omitted).

In *Ashley,* the Court of Appeals reviewed the sufficiency of the government's application for wiretapping and determined that it was adequate. In the lengthy affidavit, the DEA agent set forth all the procedures that had been used in the government's investigation into the suppliers of a drug trafficker and explained why further efforts appeared unlikely to expose said suppliers. The affidavit described the one year and four months investigation during which the government purchased controlled substances, conducted physical surveillance, conducted consensual recordings of telephone conversations, and utilized pen registers. Moreover, the affidavit contained the agent's affirmative belief that wire communication surveillance would be helpful in identifying the roles of the participants in the drug trafficking and in the financial backing.

Contained in the affidavit was a description of the normal investigative procedures that had been tried and failed and were unlikely to achieve success: the undercover informants could not discover the identity of the target sources; the government was un-

willing to grant immunity and the grand jury process appeared fruitless; undercover infiltration was deemed futile in that the drug trafficker refused to allow his suppliers to meet with the agents; and several incidents, detailed in the affidavit, demonstrating the targets' wariness and the potential dangerous position into which the agents were being placed.

Conducting a "commonsense and practical" review of the affidavit, the court determined that "the affidavit made a satisfactory showing of antecedent efforts and sufficiently illustrated why additional endeavors would be unlikely to succeed or be too dangerous." *United States v. Ashley,* 876 F.2d 1069, 1075 (1st Cir.1989). The court found that the affidavit complied with the government's burden to show that there was a "reasonable likelihood" that other techniques would not achieve their goal: revealing the drug trafficker's suppliers. *Id.*

In the case at hand, the Court shall now determine the sufficiency of the affidavit submitted by special agent Sergio Siberio from the FBI. Siberio's lengthy affidavit detailed the federal investigation into violations of federal narcotic and money-laundering laws that lasted from August 17, 1992 through June 1994.

According to the affidavit, the investigation was initiated following receipt of notification from a bank that an individual was conducting suspicious money-order purchases and that two individuals were using a residence to conduct accounting affairs for a money-laundering operation. Following said information, the FBI obtained a search warrant and seized money orders and United States currency in large amounts. The two individuals implicated by the search agreed to cooperate with the government as undercover informants. Based on the information obtained, the FBI conducted physical surveillance and trash investigations. They searched the DEA database as to individuals identified by the informants. The FBI supervised FBI controlled money-laundering. Also, the FBI undertook consensual recordings of telephone conversations and used pen registers and telephone tolls to monitor the targets' activities.

Based on Siberio's experience, said agent stated in his affidavit several reasons for the need of electronic surveillance to uncover the entire money-laundering organization. First, Siberio stated that the FBI had tried physical surveillance, consensual recordings, undercover meetings, trash covers, record checks, and debriefings, yet none of these techniques permitted the FBI to uncover the entirety of this operation. Siberio explained that this organization is aware of the happenings in the surroundings and uses countersurveillance techniques such as frequent changing of vehicles and disguising their true names. The consensual telephone recordings were all short in duration and involved a coded language, thus making it difficult for the FBI to ascertain much information. Physical surveillance enabled the FBI to identify some of the targets, but was a limited technique. Said surveillance did not provide the FBI with all the necessary information in that the FBI had to speculate as to the reason for the meeting. Additionally, physical surveillance could threaten the agents' and informants' safety.

The technique of grand jury subpoenas also was a limited one, Siberio stated. It was not practical due to the limited number of members of the money-laundering organization that the FBI had actually identified. And due to the early stage of the investigation, it would not be wise to grant immunity, and yet without immunity, the targets would not cooperate and testify, choosing instead to invoke the Fifth Amendment. Also, the grand jury would alert the targets of the ongoing investigation.

Although the FBI was using confidential informants and cooperating sources, these individuals had limited knowledge and were never able to contact subjects without the authorization of the leader, Jancho. The use of undercover agents and police was unable to fully identify the extensive structure of the organization's criminal activities as there were fourteen suborganizations that were operating independently. Interviewing the subjects or other associates would alert them to the existence of the investigation.

Search warrants were useful and successfully uncovered evidence, yet there did not exist probable cause to obtain other search warrants. Moreover, Siberio stated in his affidavit, that due to the dispersed nature of the organization, searches would not successfully uncover the entire enterprise, but would rather alert the targets of the investigation. Finally, because the subjects utilized cellular telephones to conduct their business, and because it was not common knowledge that the Puerto Rico Telephone Company had acquired the equipment necessary to intercept cellular telephone conversations, electronic surveillance of said telephones would be an extremely effective tool for the investigation.

The affidavit describes the numerous techniques employed by the FBI. It also sufficiently explains the reasons why further utilization of the normal techniques would be futile or too dangerous in uncovering the entire money-laundering organization due to the organization's utilization of counter-surveillance techniques and the organization's decentralized nature. The affidavit's illustration of the government's efforts demonstrates that the government did not seek electronic surveillance when it could have employed other procedures. Rather, the affidavit demonstrates that based on the agent's experience in this type of investigation, and due to the decentralized nature of the money-laundering operation and the wariness of the targets to surveillance techniques, the alternatives to electronic surveillance would not disclose the extensive money-laundering organization. *See Ashley*, 876 F.2d at 1072–73. Viewing the affidavit as a whole, the Court finds that the government's application met its "burden to show a 'reasonable likelihood' that alternative investigatory techniques would fail to expose" the money-laundering organization. *Ashley*, 876 F.2d at 1075. Accordingly, finding that the government's application was not deficient, the Court denies defendant's motion to suppress on that ground.

## B. Court's Review Of Application

■ Defendant also argues for suppression of the wire-tapping recordings based on defendant's belief that the issuing judge did not properly review the government's application prior to granting the requested authorization. Under 18 U.S.C. § 2518(3)(c), the reviewing judge must determine that "normal investigative procedures have been tried and have failed, or reasonably appear to be unlikely to succeed if tried or to be too dangerous." As with the requirement under section 2518(1)(c), courts have interpreted section 2518(3)(c) to ensure that the government does not utilize wiretapping in situations where normal investigation procedures would be sufficient. *United States v. Kahn*, 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 983 n. 12, 39 L.Ed.2d 225 (1974).

The reviewing court should adjudge the application's compliance with the legal standard "in a 'practical and commonsense manner.'" *Abou–Saada*, 785 F.2d at 11. The court shall "take the facts as stated in the affidavit, for the validity of a warrant depends upon the sufficiency of the affidavit on its face, where ... there is no allegation that the affiant deliberately lied." *Abou–Saada*, 785 F.2d at 13. The Court may look to the nature of the crime and the "craftiness and wariness" of the subjects in determining whether the government's use of wiretapping is reasonable. *Ashley*, 876 F.2d at 1072–73. "The government affidavit is adequate if it satisfies the burden that it indicate a 'reasonable likelihood' that alternative techniques would fail to expose the crime." *Ashley*, 876 F.2d at 1073.

In the case at hand, the Court notes that defendant does not allege misrepresentation or inaccuracies in the affidavit. Therefore, this Court shall base its determination of the sufficiency of the application on the affidavit's facts. *See Ashley*, 876 F.2d at 1073–74. The Court having found above that the affidavit did meet the government's burden of showing a "reasonable likelihood" that alternative procedures would be futile, the Court finds defendant's argument that the issuing judge granted a deficient application to be unpersuasive. Rather, based on the affidavit, the issuing judge could reasonably have concluded that the usual techniques and procedures reasonably appeared to be unlikely to achieve the investigation's goal, which was

to uncover the extensive money-laundering operation. *See id.* at 1075.

Defendant further argues that the issuing judge granted the government's application based on additional information that was not included in the application and not placed in the record. Defendant offers no proof to substantiate this assertion. As stated above, the Court finds that the government's application on the record was sufficient and the judge's granting of said application was reasonable. Accordingly, the Court finds the order authorizing the wiretapping to be valid in that it was based on an application that was supported by a sufficient affidavit. *See Abou–Saada*, 785 F.2d at 13.

### C. Naming of Defendant As Target

■ Next, defendant argues that the wiretapping should be suppressed because the government intentionally failed to name defendant Montalvo in the application for authorization to conduct electronic surveillance. Under 18 U.S.C. § 2518(1)(b)(iv), the government is required to list in the application the identity of the targets only "if known." Accordingly, "the Government is not required to identify an individual in the application unless it has probable cause to believe (i) that the individual is engaged in the criminal activity under investigation and (ii) that the individual's conversations will be intercepted over the target telephone." *United States v. Donovan*, 429 U.S. 413, 423, 97 S.Ct. 658, 666, 50 L.Ed.2d 652 (1977).

Defendant offers no evidence to support his allegation that the government intentionally failed to name him. And as seen in the government's exhibit C, the government did not know of the existence of defendant Montalvo until the wiretapping. Therefore, the Court finds that the government was not required to name defendant Montalvo in the application because Montalvo was unknown to the government at the time of the filing of application.

### D. Notice By Government

Defendant argues that the recordings should be suppressed because the government violated the law in failing to provide defendant Montalvo with notice of the recordings. Under 18 U.S.C. § 2518(8)(d), the government is required to serve notice of the recordings within a "reasonable time but not later than ninety days after ... the termination of the period of an order or an extension thereof...." But the serving of notice may be postponed "[o]n an ex parte showing of good cause to a judge of competent jurisdiction...." 18 U.S.C. § 2518(8)(d).

■ As seen in the government's exhibit E, on July 20, 1994, the issuing judge granted the government's request for the postponement of the service of the requisite notice pending further order of the court due to the sealing of the recordings. Then, on February 7, 1995, the issuing judge granted the government's request to order the service of notice under 18 U.S.C. § 2518(8)(d). On February 14, 1995, the government sent by registered mail said notice to defendant Montalvo, who received said notice on February 21, 1995. Accordingly, the Court finds that the government has complied with the notice provisions of 18 U.S.C. § 2518(8)(d).

■ However, even if this Court were to find that the government violated the notice provision of 18 U.S.C. § 2518(8)(d), suppression is warranted only if defendant has satisfied his burden of proof that defendant was prejudiced by the postponement of the notice or that the government's violation was due to a conscious decision by the government to violate the law and to prevent Montalvo from receiving notice. *See United States v. Harrigan*, 557 F.2d 879, 884–85 (1st Cir.1977). Defendant alleges no prejudice as a result of the postponed notice. Moreover, the record shows that defendant Montalvo did receive documents relating to the Court's authorization of the electronic surveillance on December 16, 1994, and that defendant received copies of the recordings on January 4, 1995. Accordingly, defendant received all the information required under 18 U.S.C. § 2518(8)(d).

Moreover, the record shows that pursuant to section 2518(8)(d), the government sought and obtained postponement of the notice due to the sealing of the recordings; and that upon the termination of said postponement, the government served notice of the record-

ings on defendant Montalvo. Based on these facts, the Court finds that the government did not postpone the notice in order to violate the law and prevent Montalvo from obtaining notice. Therefore, the Court finds that defendant has not met his burden of proof to justify the suppression of the recordings due to the postponement of the service of notice upon Montalvo.

### E. Dismissal Of Indictment

As the Court has denied defendant's various grounds for suppression of the recordings, defendant's argument to dismiss the indictment is insupportable.

### F. Evidentiary Hearing

Finally, defendant requests that the Court hold an evidentiary hearing in order to determine defendant Montalvo's motion to suppress. As stated above, the validity of a court order authorizing electronic surveillance rests solely upon the affidavit's sufficiency. *Abou–Saada*, 785 F.2d at 13. And an evidentiary hearing is warranted only when there are allegations of "deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Here, defendant has not alleged that the government's affidavit contains factual misrepresentations or inaccuracies. Therefore, the Court finds no reason to hold an evidentiary hearing on defendant's motion to suppress the Title III recordings.

**WHEREFORE,** the Court hereby **denies** defendant's motion to suppress the Title III recordings and to dismiss the indictment and **denies** defendant's motion for a hearing on defendant's motion to suppress.

IT IS SO ORDERED.