**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David VARGAS, Defendant–Appellant.**

No. 96–2140.

United States Court of Appeals,
Seventh Circuit.

Argued April 3, 1997.

Decided May 30, 1997.

Peggy A. Lautenschlager, Robert A. Anderson (argued), Office of the United States Attorney, Madison, WI, for plaintiff–appellee.

Ellen R. Domph (argued), Chicago, IL, for defendant–appellant.

Before POSNER, Chief Judge, and WOOD, Jr. and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

David Vargas pleaded guilty to conspiracy to possess with the intent to deliver cocaine under 21 U.S.C. § 846. He now appeals a suppression ruling that he had reserved at the time of his plea and his sentence. For the reasons given in this opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

A detailed recitation of the factual background is unnecessary to a resolution of the issues brought by Mr. Vargas on appeal.

Based on information obtained from confidential informants, surveillance and wiretaps, the government stopped Mr. Vargas on the highway and arrested him for his role in a drug conspiracy. Later a firearm was found behind a heating vent in his car. Mr. Vargas' main coconspirators were Jeffrey Pickett, Michael Keltner and Gregory Kole. Mr. Vargas arranged for the distribution of drugs from the main supplier to Pickett and Keltner by setting up dates and times for pickup. Kole assisted Mr. Vargas in transporting the drugs.

## II

## DISCUSSION

### A. The Wiretap

Mr. Vargas contends that the government lacked the requisite probable cause to tap the telephone of his confederate Pickett and that the subsequent tapping of his own phone similarly lacked probable cause. He also contends that neither of these wiretaps was "necessary," as required by 18 U.S.C. § 2518. Finally, he contends that the wording of the wiretap order allowed for interception for only 10 days, not for 30.

We agree with the government that whether the necessary probable cause existed is an issue that we must review de novo. *See Ornelas v. United States,* — U.S. —, —, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996).

▮▮ At the outset, we note that Mr. Vargas has only limited standing to object to lack of probable cause to tap Pickett's phone. "The interception of calls to which he was not a party did not intrude upon [Mr. Vargas'] fourth amendment rights, ... so he has no standing to seek suppression of evidence gathered from those intercepts." *United States v. Thompson,* 944 F.2d 1331, 1339 (7th Cir.1991), *cert. denied,* 502 U.S. 1097, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992).[1] In any

---

1. Nor do we have reason to quarrel with the view of our colleagues in the Ninth Circuit that the government did not need to have probable cause simply to list Mr. Vargas as a probable converser on the application to tap Pickett's phone. *See United States v. Martin,* 599 F.2d

event, the affidavit submitted in support of the wiretap establishes probable cause to tap Pickett's phone. An informant had told an FBI agent that the informant regularly purchased cocaine from Pickett since early 1994. Either Pickett or Keltner would deliver the cocaine to the informant. During one delivery, Keltner was driving a car registered to Mr. Vargas and returned to Mr. Vargas' residence after the delivery. Pickett and Keltner told the informant that the cocaine came from the Wisconsin Dells area, where Mr. Vargas lived. From April 7 to October 17, 1994, 115 phone calls had been made from Pickett to Mr. Vargas; 108 had been made from Mr. Vargas to Pickett from March 24 to December 21, 1994. The FBI also knew that Michael Unterberger was supplying cocaine to Pickett and that Mr. Vargas was known to associate with Unterberger. Mr. Vargas had a long criminal record.

■ The evidence supporting the application to tap Mr. Vargas' phone was even greater because it contained not only the information recited to support the Pickett wiretap—details from confidential informants, surveillance and pen registers—but also the evidence from the Pickett phone tap.

■ We also have no hesitation in affirming the district court's conclusion that the FBI agent's affidavit contained a sufficient factual predicate to justify the finding that a wiretap was necessary within the meaning of 18 U.S.C. § 2518. This determination is left to the trial court's discretion. *Thompson,* 944 F.2d at 1340. Here, the court's determination was supported by ¶¶ 44–51 of the Pickett application and ¶¶ 104–113 of the Vargas application. The FBI needed to tap the phones to obtain the identities of those higher up in the chain. Due to the nature of the group, the informants were unable to have contact with the individuals higher up. That Pickett would cooperate was not known at the time of the wiretaps; approaching him at that time could have placed the entire operation in jeopardy.

The wording of the wiretap authorization plainly allowed for the interception to continue for 30 days, not 10.

#### B. *Sentencing Matters*

Mr. Vargas also challenges certain determinations made by the district court during sentencing. We shall address each of these submissions.

■ 1. *Firearm Enhancement*—The district court determined that, because Mr. Vargas possessed a gun in connection with the conspiracy, a 2–level upward adjustment under the Guidelines was appropriate. *See* U.S.S.G. § 2D1.1(b)(1). We do not believe that the district court committed clear error. The governing standard is set forth in *United States v. Valencia,* 913 F.2d 378 (7th Cir.1990):

> The application note indicates that § 2D1.1(b)'s enhancement normally applies when weapons are present during a drug offense; the exception occurs when it is "clearly improbable that the weapon was connected with the offense." Whether an event is "clearly improbable" is a fact question, so we will not overturn the district court's decision to enhance a sentence under § 2D1.1(b) unless it is clearly erroneous.

*Id.* at 384–85. It was not "clearly improbable" that Mr. Vargas had the firearm in his car for the purpose of protecting the large sums of cash involved in the drug conspiracy. *Cf. United States v. Rush,* 890 F.2d 45 (7th Cir.1989) (holding that enhancement was applicable when firearm was found in defendant's car outside railway station in which defendant was engaging in drug-related activity). Although at the time of his arrest Mr. Vargas was ostensibly on a family outing, the evidence supported the conclusion that, during the trip, he had stopped at the house of an associate in the drug business and conducted business in furtherance of the conspiracy. He had previously arranged for one of his couriers to pick up cocaine in Chicago. The district court also was entitled to discount the testimony of Mr. Vargas' wife

880, 884–85 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 2408, 60 L.Ed.2d 1067 (1979), *and*

*overruled on other grounds by United States v. DeBright,* 730 F.2d 1255 (9th Cir.1984).

that he used the firearm—a 9mm semiautomatic Beretta handgun with hollow point ammunition—to hunt squirrels.

 2. *Role in the Offense Enhancement*—The district court also determined that a 3–level increase was warranted because of Mr. Vargas' role in the offense. In reviewing this determination, we note at the outset that, although the district court characterized Mr. Vargas as an "organizer or leader," the district court departed by 3 rather than 4 levels. We therefore shall assume that the court intended to classify Mr. Vargas as a "manager or supervisor." *Compare* U.S.S.G. § 3B1.1(a) *with* U.S.S.G. § 3B1.1(b). Indeed, the transcript of the sentencing proceedings supports this interpretation.

 We cannot say that the district court committed clear error in this determination.[2] An upward departure is permitted if a defendant controls others. *United States v. Flores–Sandoval,* 94 F.3d 346, 349–50 (7th Cir.1996); *United States v. Vargas,* 16 F.3d 155, 160 (7th Cir.1994); *United States v. Brown,* 944 F.2d 1377, 1381 (7th Cir.1991). Mr. Vargas does not contest that the organization consisted of 5 or more individuals. The court determined that Mr. Vargas directed the efforts of Pickett, Kole and Keltner and that he arranged for the drug transactions; he also directed and controlled Kole, directed Pickett and indirectly recruited, directed and controlled Keltner through his direction of Pickett. In the district court's view, Mr. Vargas was more than a middleman; he "exercised a great deal of management responsibility over the property and activities of this criminal conspiracy." R.85. The record supports the determination of the district court. In his brief, Mr. Vargas admits to having some control over Kole. Appellant's Br. at 11 ("Vargas also utilized Kole, his courier...."). He also admits to arranging for the distribution of drugs to Pickett, Keltner and Kole by setting dates and times for them to meet the supplier for pick-up. *Id.* at 7, 19. Orchestrating or coordinating the activities of others is enough to justify the departure. *Flores–Sandoval,* 94 F.3d at 349–50; *Vargas,* 16 F.3d at 160. The district

court was entitled to conclude that Mr. Vargas had a higher relative responsibility than Kole and Keltner, which is a key factor in the managerial departure. *United States v. Bush,* 79 F.3d 64, 67 (7th Cir.1996); *United States v. Young,* 34 F.3d 500, 508 (7th Cir. 1994); *Brown,* 944 F.2d at 1381. Controlling others and recruiting couriers are also important factors. *Id.; Thompson,* 944 F.2d at 1349–50.

### Conclusion

Accordingly, the judgment of the district court is affirmed.

---

2. The district court's finding that Mr. Vargas acted as a manager or supervisor is reviewed for clear error. *See United States v. Young,* 34 F.3d 500, 507 (7th Cir.1994).