**UNITED STATES of America, Plaintiff,**

v.

**Sergio GUTIERREZ–SANTIMAN, et al., Defendants.**

**No. 2–97–CR–0058–S.**

United States District Court, D. Utah, Central Division.

Nov. 14, 1997.

Richard D. McKelvie, Asst. U.S. Atty., District of Utah, Salt Lake City, UT, for Plaintiff.

Bradley P. Rich, Yengich Rich & Xaiz, Salt Lake City, UT, Deirdre A. Gorman, Farr Kaufman Sullivan Gorman Jensen Medsker & Perkins, Ogden, UT, Michael W. Jaenish, Salt Lake City, UT, Edward K. Brass, Lynn C. Donaldson, Salt Lake City, UT, Mary C. Corporon, Corporon & Williams, Salt Lake City, UT, Delano S. Findlay, Salt Lake City, UT, Charles Bevan Corry, Salt Lake City, UT, Gregory G. Skordas, Watkiss Dunning & Watkiss, Salt Lake City, UT, Kenneth R. Brown, Salt Lake City, UT, for Defendants.

### ORDER

SAM, Chief Judge.

Before the court are Oppositions to Magistrate's Report and Recommendation filed by defendants Sergio Gutierrez–Santiman, Jorge Mesa–Garcia[1], and Jose Torres Romero. By these documents, defendants object to a Report and Recommendation signed by the magistrate judge on August 19, 1997. Specifically, all three defendants object to the findings in the Report and Recommendation with respect to the issue of "necessity" in the wiretap order.

The court has considered the matter *de novo*, concludes the Report and Recommendation is correct in every material respect, and adopts it as the court's own opinion. Accordingly, the motions to suppress the wiretap evidence are hereby DENIED.

### REPORT & RECOMMENDATION

BOYCE, United States Magistrate Judge.

The defendants Sergio Gutierrez–Santiman, Jorge Mesa Garcia, Miguel Castillo, Jose Torres–Romero, Eduardo Macias, Oscar Gomez, Javier Ortiz, Lorraine Marie Vasquez, and Juanita Vasquez have been indicted on various charges arising from a wide ranging drug conspiracy and continuing criminal enterprise (File Entry # 15).

1. Defendant Mesa–Garcia has joined in the memorandum filed by defendant Gutierrez–Santiman.

Sergio Sylvester Gutierrez (Santiman) moved to suppress the evidence obtained by a legally authorized wiretap on telephone number 801–823–9271 subscribed to by Juan Rodriguez and located at 352 West Reed Road, Salt Lake City, Utah.[1] A memorandum was submitted in support of the motion (File Entry # 47). The memorandum contains as an attachment the affidavit of Michael A. Christman, Special Agent, Federal Bureau of Investigation whose affidavit was the basis of the wiretap order issued by Chief Judge David K. Winder, United States District Court for Utah.

Subsequent to Gutierrez' motion, defendant Lorraine Vasquez filed a similar motion to suppress (File Entry # 61) and also submitted a memorandum in support of the motion to suppress (File Entry # 62). Jorge Mesa Garcia made a motion to suppress wiretap evidence (File Entry # 65) as did Javier Ortiz (File Entry # 66). Defendants Mesa–Garcia (File Entry # 68) and Ortiz (File Entry # 67) both submitted memoranda in support of their motions. Eduardo Macias made a motion to suppress the wiretap evidence (File Entry # 69) and submitted a memorandum in support of the motion (File Entry # 70).

The United States submitted a response to all the motions and included another affidavit that was incorporated by reference in the affidavit for the wiretap (File Entry # 76). A hearing was held on the motions to suppress.

Defendants Gutierrez, Lorraine Vasquez, Ortiz, Mesa–Garcia, and Macias all challenge the wiretap on the grounds that there was inadequate evidence to show probable cause for the interception order and that the supporting affidavit did not show that other investigative techniques had been "exhausted" as required, they contend, by 18 U.S.C. § 2518(3)(c).

#### The Affidavit

The affidavit in support of the wiretap order, in this case (telephone number 801–323–9721) is a sixty-three page affidavit of

1. The motion did not comply with D. Utah Rules 307(a) and 202. This is also true as to some of the motions of the other defendants.

FBI S/A Michael A. Christman. It was presented to Chief Judge Winder on January 16, 1997. The affidavit refers to the persons whose communications are sought to be intercepted which included Sergio Sylvester Gutierrez Santiman, (¶ 2), a defendant and movant in this case. A detailed description of the persons and some of their criminal record is provided (¶ 8). Several of the investigative subjects had prior criminal convictions for drug offenses or have been arrested or involved with controlled substances. Some of the other persons involved are Enrique Avendano Flores, Luis Fernando Arreole, Xavier Jesus Martinez, Javier Suarez, Teresa S. Velasco, Jorge Hernandez, Gregorio Avendano Flores, Chino LNU, Brenda Elizabeth Miera, Hector Garcia Hernandez, Hector Velasco and Willie Rivera (¶ 6). It is alleged these persons' conversations would be intercepted from a wiretap at 801–323–9721. None of the other defendants who have made motions to suppress were named as persons whose communications were to be intercepted, however, the Government concedes the standing of each moving defendant to challenge the wiretap in this case. The many suspected offenses of the investigation are identified (¶ 3) including conspiracy to distribute and possess controlled substances, and other controlled substances offenses, as well as money laundering and weapons offenses. The affiant had supervised the investigation since its inception in February, 1996.

The affidavit recites that a prior interception order was signed by Judge Winder as to phone number 801–596–7308 (not the number involved in this motion) on December 16, 1996. Enrique Flores was the phone subscriber. The affidavit for that interception is expressly incorporated by reference as Exhibit 'A' to the affidavit of concern in this case (¶'s 11, 12). Although the prior wiretap order is not directly concerned with the intercept for number 801–323–9721, it is pertinent by showing the scope of the alleged illegal conduct, the extent of the investigation pertinent to this matter and is directly of importance to the issue of whether the instant order is supported by an adequate showing of probable cause and necessity for the wiretap. The Exhibit 'A' affidavit is eighty-four pages and the affidavit and order were executed and issued on December 16, 1996.

The Exhibit 'A' affidavit names some of the same persons as objects of the interception as are involved in the affidavit in this matter and the offenses under investigation were drug offenses the same as those similarly identified in this case. The criminal history of Enrique Avendano Flores and the other subjects was set forth (¶ 10). An extensive drug conspiracy is involved.

The affidavit of December 16, 1996 describes the use of informants to obtain information about drug trafficking with Flores and one Arreole. Five confidential informant (CI) sources were utilized. The informants indicated Flores was involved in distributing large quantities of marijuana, cocaine, and methamphetamine in the Salt Lake area over the last year and a half. The operations and sources of information are set out. Surveillance verified the CI information (pp. 12–17). The information provided described the transportation of drugs from Los Angeles to Salt Lake City including times, quantity and manner. It also described various and ongoing purchase transactions and undercover buy operations for large amounts of drugs and money (p. 25). Firearms, including machine guns, were involved. The use of phones and pagers to effect the operations is detailed as well. Pen registers were employed (¶ 50, p. 33; ¶ 109, p. 61). The investigative undercover operations and activities were from February, 1996 to December 12, 1996 and involved Flores and Arreole and several others also named in paragraphs of the January 16, 1997 affidavit, thus showing the interrelationship of the illegal activities between the two affidavits. The undercover buys involved informants and undercover FBI agents. A report of a drug interdiction of cocaine by one of the persons involved is detailed (pp. 61–62). An analysis of the pen register and trap and trace evidence on the involved phones was provided (pp. 63–68).

In the December 16, 1996 affidavit, the affiant specified the need for the wiretap (pp. 68–81). Undercover activity was indicated as adequate to prosecute Flores for drug transactions but not enough information was developed to his position or his associates. The

full scope of the enterprise was not adequately developed. Confidential sources, physical surveillance, grand jury investigation, immunity and interviews, pen register and trap and trace devices were evaluated and their utility and inadequacies detailed. The same was done as to the use of search warrants.

Thus, the December 16th affidavit detailed an extensive drug trafficking enterprise involving many persons on a wide scale, but one that was carefully controlled. The necessity for a wiretap interception is adequately demonstrated. That warrant affidavit provided additional supporting information for the affidavit of January 16, 1997, the subject of this motion.

In addition to what has been noted, the January 16th warrant addresses the confidential sources that have provided information regarding Flores, Arreole, Velasco and Gutierrez–Santiman. Information was provided that Gutierrez–Santiman was a kilogram size drug distributor in the Salt Lake City, Utah area. The defendant Gutierrez–Santiman's girl friends were utilized as information sources. A purchase of a large amount of cocaine from Gutierrez–Santiman was made by an FBI agent.

Facts and circumstances of the FBI's undercover operations are detailed as to drug transactions with Gutierrez–Santiman and others from August 1996 to November 7, 1996 (pp. 16–19). Trash can searches of the residence at 352 West Reed Road, where the phone to be intercepted was located, suggested drug activity at that address. An FBI agent identified the residence as belonging to Gutierrez–Santiman (¶ 19). On August 26, 1996 in an unrelated investigation 2½ kilos of cocaine, wrapped in the same kind of wrapping as items that were found in Gutierrez–Santiman' trash can, was recovered during a vehicle search.

The intercepted conversations from 801–596–7308, based on the December 16, 1996 authorization, are set forth showing particular ongoing drug activity of the subject persons. The calls involved were in part calls to or from the number to be intercepted (801–823–9271). These specific calls involved drug trafficking (pp. 22–32). The calls and drug activity were corroborated by surveillance and the use of informants. A large quantity

of money was also seized from a vehicle in a transaction at another place. However, this location was part of the networking sites of the various drug traffickers.

Pen Register and Trap and Trace data was gathered on the premises and subject number beginning on November 25, 1996. From December 5, 1996 to January 5, 1997 568 outgoing calls from the number were made. Forty calls were made to the number involved in this case. Incoming calls were from the Enrique Flores' number and from the residence where significant drug activity had been detected. Outgoing calls were in some instances to digital pagers to Luis Arora and Luis Arreole. Arreole is an associate of Gutierrez–Santiman. The evidence shows drug transactions between Flores, Arreole and Gutierrez–Santiman. Calls were made to or from other of the subjects involved in the drug scheme.

The prior December 16, 1996 interception order of Judge Winder disclosed a number of conversations that involved drug trafficking at numbers where calls at other times had been made from or to the subject number and the intercepted calls involved persons targeted by the purposes of the order in this case (pp. 37–41). Additional corroborative information as to calls to the same person and numbers involved in other features of the investigation were obtained from a pen register/trap and trace investigation up to January 7, 1997 and also involved the subject number. These showed calls made to and from persons, such as Flores, involved in drug activities (p. 43). There were also calls from Flores to the subject number that were ascertained from a trap and trace and pen register surveillance on Flores' number 801–596–7308.

The need for the interception at 801–323–9721 is set forth in the affidavit. The affidavit recites that drug transactions as to some of the targets have been identified but not all persons in the conspiracy and not enough evidence has been developed to prosecute Luis Arreole, Sergio Gutierrez–Santiman and other involved persons (p. 45). The interception is stated as necessary to identify mid-level transporters and distributors. Normal investigative techniques have been employed

but insufficient evidence to prosecute has been developed. The normal investigative techniques have been tried with only limited success.

Undercover activity was empoyed with the use of confidential sources "CS." Contact was made with Juanita Chavez and eventually a purchase of 1/4 kilogram of cocaine was made from Gutierrez–Santiman. A second transaction occurred, however, the CS was unable to get additional information as it was necessary to go through Chavez (p. 47). Full development of the Gutierrez–Santiman Flores relationship could not be made by undercover activity.

Confidential sources were employed that were valuable in developing background information but the CS cannot go directly to Gutierrez–Santiman and could not obtain evidence on the method of Gutierrez–Santiman's operation. The CS were not able to meet with the coconspirators.

Physical surveillance was employed at Gutierrez–Santiman's residence where the interception was to be made. Observations of Flores and various vehicles involved were made. The surveillance was difficult and detection was a matter of concern because of a hostile neighborhood, difficult physical surroundings and presence of street gang members. The surveillance provided information on the suspects' movements and vehicles in the area. The principal benefit was corroboration of information and other items obtained from other forms of investigation.

Grand Jury investigation was considered, but potential witnesses were hostile or subject to retaliation because they are illegal Mexican aliens. This technique and Grand Jury activity would increase the risk of flight by the targets. Immunity was considered but coconspirators were not fully informed and afraid of retaliation. Often persons with information, being involved, will refuse to cooperate. Other concerns with safety made this technique unlikely.

Pen Registers and Trap and Trace methods were fully utilized and were useful but they do not provide direct information of illegal activity. The use of these devices has been previously discussed as to frequency of calls and possible persons involved. The affiant concluded search warrants would not be effective in determining the full scope of the conspiracies involved (Tr. p. 58). Factual information from surveillance for a search warrant at the subject address was not able to be developed sufficient for a search warrant. Also, with diverse persons involved, the information did not provide a basis for a search of all of the persons involved.

Based on the discussion in the affidavit the issuing judge determined the interception should be allowed and the interception order was issued. All defendants have contended there is inadequate evidence in the wiretap application to support probable cause for the order. Defendants generally assert there was insufficient evidence to establish probable cause and the evidence for probable cause was based on stale information that was months old.

■ In this case, the affidavits show substantial and on going drug trafficking and the probable trafficking in controlled substances by the various persons named herein-before. The drug trafficking appears to be a network of closely associated persons and with various persons used and involved in different transactions. The premises at 352 West Reed Avenue, Salt Lake City, and phone number 801–323–9721 have been inextricably involved in the network of drug trafficking. The evidence, contrary to the contention of the defendants, shows the use of the subject phone on the premises and probable drug trafficking activities up to January 5, 1997, a few days before the court's intercept order. Surveillance corroborated probable trafficking as of January 6, 1997. The trafficking is not isolated and its scope is corroborated by surveillance, undercover operations, prior wiretap interceptions, and Trap and Trace/Pen Register information. The character of the persons involved also corroborates the relationship between the suspects as being one associated with controlled substances. See *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Wagner,* 989 F.2d 69 (2d Cir.1993).

18 U.S.C. § 2518(1)(b) provides:

(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to

the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

See also 18 U.S.C. § 2518(3)(a) & (b) to the same effect.

■■■ The above provisions require an application for a wiretap to contain a statement showing probable cause to conduct the surveillance and interception of the specified telephone. *United States v. James*, 494 F.2d 1007 (D.C.Cir.1974); *United States v. Armendariz* 922 F.2d 602 (10th Cir.1990). The warrant is presumed proper and the defendant carries the burden of showing the inadequacy of the warrant. *United States v. Quintana*, 70 F.3d 1167 (10th Cir.1995); *United States v. Nunez*, 877 F.2d 1470 (10th Cir.1989); *United States v. Newman*, 733 F.2d 1395 (10th Cir.1984). Probable cause must show the person and communications sought to be intercepted and that the telephone will probably be used for criminal conduct. *United States v. Williams*, 45 F.3d 1481 (10th Cir.1995); *United States v. Meling*, 47 F.3d 1546 (9th Cir.1995); *United States v. Mesa–Rincon*, 911 F.2d 1433 (10th Cir.1990); 18 U.S.C. § 2518(3). This will depend on the circumstances of each case. See *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). The application affidavit should be read in "common sense" rather than a hypothetical manner *United States v. Johnson*, 645 F.2d 865, 867 (10th Cir.1981). Certainty is not required in the application rather the standard is one of fair probability *United States v. Alfano*, 838 F.2d 158 (6th Cir.1988). See also *United States v. Page*, 808 F.2d 723 (10th Cir.1987). The prior criminal record and drug involvement of the targeted persons and their associates is relevant to the assessment of probable cause. *United States v. Wagner*, 989 F.2d 69 (2d Cir.1993); *United States v. Fina*, 405 F.Supp. 267, 271 (E.D.Pa. 1975). The officer's experience and expertise is relevant consideration on the issue of prob-

able cause *United States v. Montalvo*, 882 F.Supp. 230 (D.P.R.1995), as well as the targets associations with various persons involved in drug activities. All the evidence in the affidavit at issue supports probable cause. *United States v. Armendariz*, supra; *United States v. Nunez*, 877 F.2d 1470 (10th Cir.1989); *United States v. Apodaca*, 820 F.2d 348 (10th Cir.1987); *United States v. Savaiano*, 843 F.2d 1280 (10th Cir.1988).

There was sufficient evidence to establish the probable cause of drug activity, distribution and conspiracy and its connection to drug distribution activities from the phone number to be surveyed by the challenged order. The information shows continuing and ongoing drug activity up to and including the date of the surveillance authorization order. The trap and trace information clearly supports the high likelihood the target phone was being used for drug distribution purposes. *United States v. Tehfe*, 722 F.2d 1114 (3rd Cir.1983). The evidence presented by the affiant also shows the use of the subject phone for trafficking activities in the past (wiretap) and its use up until the time of the issuance of the warrant (trap and trace and pen register evidence). Thus probable cause existed at the time the warrant was issued. *United States v. Domme*, 753 F.2d 950, 953 (11th Cir.1985). In two recent cases, decisions of federal courts of appeal have found adequate probable cause for the issuance of the wiretap authorization under similar circumstances. *United States v. Vargas*, 116 F.3d 195 (7th Cir.1997); *United States v. Elder*, 90 F.3d 1110 (6th Cir.1996). There was probable cause to conclude that inception of calls at the subject number would involve the named persons and drug trafficking.

The argument that the warrant information was stale is without merit. First, the information gathered was current, including the December 16, 1996 wiretap evidence and trap and trace information going into January 1997, just before the interception order in this case was issued. This, coupled with the fact that the evidence in both affidavits, shows a continuing drug trafficking activity of a substantial nature and connected with the phone, residence, and targets of the interception, clearly requires the conclusion

that the contention about stale information is without foundation and the challenge to the interception order without merit. See *United States v. Myers,* 106 F.3d 936 (10th Cir. 1997) (Warrant information was not stale even with a five month lapse, where defendants' drug activities were "ongoing and continuous"); *United States v. Smith,* 63 F.3d 956 (10th Cir.1995) (Not stale where information related in time to search); *United States v. Pace,* 981 F.2d 1123 (10th Cir.1992) (Ongoing drug distribution, information not stale); *United States v. Sturmoski,* 971 F.2d 452 (10th Cir.1992); *United States v. Snow,* 919 F.2d 1458 (10th Cir.1990).

There is no merit to defendants' contention of lack of probable cause. See *United States v. Vargas,* supra, (7th Cir.1997).

### Necessity

The defendants contend the interception order is invalid because there is a failure to show other investigative techniques have been "exhausted" as they contend is required by 18 U.S.C. § 2518(c).

18 U.S.C. § 2518(1)(c) provides that a wiretap application must contain:

> (c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

At the outset it should be observed that to meet a necessity obligation there is no need to show "every conceivable method of investigation was tried and failed or that other steps could have been taken." *United States v. Armendariz,* 922 F.2d 602, 607 (10th Cir.1990). There is no requirement to "exhaust all other conceivable investigative procedures before resorting to wiretapping." *United States v. Apodaca,* supra, 820 F.2d at 350; *United States v. Page,* supra. 808 F.2d at 729. See also *United States v. Nunez,* supra. 18 U.S.C. § 2518(c) allows the judge to enter an interception order if "normal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or to be too dangerous." A wiretap should not be "routinely employed as the initial step in criminal investigation." *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974). Wiretapping should not be employed if "tra-

ditional investigative techniques would suffice to expose the crime." *United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). This assessment, as the court said in *Armendariz,* supra, is not an exhaustion standard:

> While the necessity requirement assures that a wiretap intrusion does not supplant traditional investigative methods, it is not intended to place this tool off limits. "[T]he restriction must be interpreted 'in a practical and common sense fashion.' "
>
> 922 F.2d at 607.

Therefore, a necessity standard rather than an exhaustion standard is the proper measure for determination. See *United States v. Edwards,* 69 F.3d 419 (10th Cir.1995); *United States v. Castillo-Garcia,* 920 F.Supp. 1537 (D.Colo.1996).

In *Edwards,* supra, the court held the necessity requirement was satisfied where the wiretap application set forth a full and complete statement as to investigative techniques and procedures utilized prior to resorting to a wiretap and the state court order found that "normal investigative procedures have been tried" and were unsuccessful. In *United States v. Page,* supra, the court considered the situation where an affidavit failed to properly state that certain evidence was fictitious. On the issue the court looked to the whole affidavit and on that basis, as to the requirement of necessity said:

> The only grounds the district court would have had for refusing to issue the warrant would have been that other avenues of investigation were still open. See 18 U.S.C. § 2518(3)(c). But a wiretap authorization can be issued even if every possible means of investigation has not been tried. See *United States v. Todisco,* 667 F.2d 255, 258–59 (2d Cir.1981) (affidavit sufficient that disclosed use of standard investigative techniques and paucity of evidence which had resulted or could be expected to result), cert. denied, 455 U.S. 906, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *United States v. Martin,* 599 F.2d 880, 886–87 (9th Cir.) ("An investigative agency is not required to exhaust all possible investigative techniques before resorting to a wiretap."), cert. denied, 441 U.S. 962, 99

S.Ct. 2407, 60 L.Ed.2d 1067 (1979). The affidavit revealed that several investigatory methods had been tried, including visual surveillance of the parties and the use of undercover agents. And the affidavit indicated that it was particularly important defendant not discover he was being investigated. On this basis, we conclude that the warrant would have been issued even if the district judge had been informed of the fictitious nature of Nicolai and the charges against her.

808 F.2d at 729.

If the only evidence of other investigative techniques and the need for electronic surveillance was merely stated in conclusory and inspecific language, it would not be satisfactory. However, if the totality of the facts stated in the warrant application show the necessity for the warrant, that will suffice. In this case, the affidavits are replete with factual information on the necessity for a wiretap.

Recently, in *United States v. Killingsworth*, 117 F.3d 1159 (10th Cir.1997) the Court of Appeals upheld a wiretap order against a challenge to the showing of necessity. The court said the order was presumed valid. The court held the necessity showing was established when the government in the warrant application discussed the investigative techniques attempted and why they were unsatisfactory and also discussed why other techniques would not be satisfactory. The court, referring to the decision in *Edwards,* supra, said the "necessity requirement is to insure that the relatively intrusive device of wire tapping is not resorted to in situations where traditional techniques would suffice to expose crime." (*Id.* at 1163). The court stated:

> If any of the four categories of normal investigative techniques referred to in the legislative history of Title III have not been tried, the government must explain with particularity why each of such untried techniques would be either unsuccessful or too dangerous. Those investigative procedures are: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants. In addition, if other normal investigative techniques such as pen registers or trap and trace devices have not been tried, a similar explanation must be offered as to why they also would be unsuccessful or too dangerous. We add pen registers and trap and trace devices to this list because they possess a logical relationship and close affinity to wiretaps and yet are less intrusive. Thus, unless the government can show that they would be ineffective or dangerous they must be tried before resorting to wiretaps.

117 F.3d 1159.

The court found the affidavit adequate.

In *United States v. Castillo Garcia,* 117 F.3d 1179 (10th Cir.1997) the court considered five separate wiretap orders. The district court had suppressed interception orders two through five. The court said the burden of proof is on the defendant to overcome the presumption in favor of the interception order. (*Id.* at 1187). The court observed that Congress had indicated that merely because an "investigation technique is theoretically possible, it does not follow that it is likely". (*Id.* at 1188). Citing *Giancana v. United States,* 352 F.2d 921 (7th Cir.1965). A practical, common sense evaluation must be made. *Id.* at 1187. The court then said:

> The "necessity" requirement of Title III is not an "exhaustion" requirement. "In examining necessity challenges to wiretap orders, we have repeatedly held that law enforcement officials are not required to exhaust all other conceivable investigative procedures before resorting to wiretapping."

117 F.3d at 1179

Conclusory statements are insufficient and "Boilerplate" assertions will not suffice. (*Id.* at 1188). The district court had found the second wiretap to be illegal. The Court of Appeals disagreed. The first wiretap application was incorporated by reference. The court referred to this as bolstering the application and found adequate consideration of the necessity criteria. The court accepted the government's reasons for not employing some investigative methods or limiting others. The court also reversed the third sup-

pression order as to one number to be intercepted but as to the other number upheld suppression because the portion of the affidavit relating to that number was misleading. That is not a contention in this case.[2] The court said a wiretap could be justified even where no "normal investigative technique" had been tried "if all such techniques reasonably appeared either unlikely to succeed if tried, or too dangerous to try ..." (*Id.* at 1192). As to the third wiretap, the court said that necessity to intercept one person's number would not necessarily apply to necessity to another. As has been noted in the instant case, the December 16, 1996 application does not necessarily supply the necessity for the January 16, 1997 interception which is a different number. However, in this case, the January 16, 1997 order, which is the subject of this motion, was supported by an additional and independent statement of necessity. However, the December 16, 1996 application also contains evidence of necessity applicable to the January 16, 1997 application.

In *Castillo–Garcia,* supra, the court also reversed suppression of the fourth wiretap for the same reasons it found the second wiretap to be adequate. The suppression of the fifth wiretap was upheld without significant discussion as to its inadequacy.

Applying the above standards to this case, it is apparent the government application addressed each of the investigative techniques identified as of significance in *Killingsworth,* supra, and *Castillo–Garcia.* Each of the categories of investigation is discussed by the affiant and the limitations or the unlikelihood of success spelled out. Undercover operations, surveillance, trap and trace, other number wiretaps, and purchases were employed. Although some significant incriminating evidence was disclosed and some corroborative evidence was gathered sufficient for prosecution of some persons, the full dimension and structure, including operating practices, remained to be developed. Several individuals believed to be involved in the scheme were still unable to be formally pursued because of inadequate evidence of criminal involvement and inadequate evidence to prosecute.

In this case, the use of multiple site bases for the trafficking operation with different phones and pagers was critical to the distribution by call system that was apparently being used by defendants and others. Because of the central role of the telephone, factual evidence of specific drug dealing on a wide scale would not likely be developed without evidence of the content of phone calls. See *United States v. Steinberg,* 525 F.2d 1126, 1130 (2d Cir.1975). Toll Records and Pen Register information coupled with surveillance was not sufficient, even though the information supported the high likelihood the target phone was being used for drug distribution purposes. *United States v. Tehfe,* 722 F.2d 1114 (3rd Cir.1983).

In this case, the investigation was not a short or causal approach. Obviously, as explained in the application, grand jury and immunity and search warrant techniques were not the kind of investigative form that would have a likelihood of success. Courts have required the defendant to rebut the prosecution's assertion of necessity. *United States v. London,* 66 F.3d 1227 (1st Cir.1995). The investigative official's experience and the targets' association with the various persons involved in drug activities is to be credited on the issues. Cf. *United States v. Montalvo,* 882 F.Supp. 230 (D.P.R. 1995). It bears on the necessity question. *United States v. Kalustian,* 529 F.2d 585 (9th Cir.1975); *United States v. Robertson,* 504 F.2d 289 (5th Cir.1974); *United States v. Orozco,* 630 F.Supp. 1418, 1511 (S.D.Cal. 1986). After the fact contentions of defendants do not invalidate the issuing magistrate's judgment. *United States v. Atkins,* 618 F.2d 366, 371 (5th Cir.1980). There is no inconsistency or inadequacy that would require suppression in this case. *United States v. Page,* supra. See also *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978); *United States v. Smith,* 31 F.3d 1294 (4th Cir.1994) (officer's explanation that most deals conducted over the phone adequately explained necessity for wiretap based on officer's experience).

---

2. The court said the misleading statement "does not" standing alone "... imply that the government lacked necessity to wiretap ..." (*Id.* at 1192).

At hearing, and to some extent in the memoranda, the defendant contended there was no need for the wiretap because other investigative techniques were working satisfactorily to uncover criminal activity. Although, other techniques employed did prove successful to some extent, the application documents the limitation of those techniques. The full continuing criminal enterprise, its dimensions, and scope of the operations involved made necessary the use of other means including the wiretap in this case.

Applying the standards in *Killingsworth,* supra; *Castillo–Garcia,* supra; *Edwards,* supra, and other decisions from the Tenth Circuit on the necessity requirement, the argument claiming a violation of 18 U.S.C. § 2518(1)(c) in this case is without merit.

### Conclusion

Defendants' motions to suppress the wiretap evidence should be denied.

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

**DATED** this 19th day of August, 1997.